**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 10 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

Z.J. GIFTS D-2, L.L.C., doing business as
CHRISTIE'S, an Oklahoma limited
partnership,

      Plaintiff-Counter-Defendant-
      Appellee,

v.

CITY OF AURORA, an Incorporated
Municipality,

      Defendant-Counter-Claimant-
      Appellant.

No. 96-1483

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 93-M-2310)

---

Charles H. Richardson (Teresa Kinney of the Office of the Aurora City Attorney, Aurora,
Colorado, and Barry Arrington of the Law Offices of Barry K. Arrington, P.C., Denver,
Colorado, with him on the briefs), Office of the Aurora City Attorney, Aurora, Colorado,
for Defendant-Counter-Claimant-Appellant.

Michael Gross (Arthur M. Schwartz with him on the briefs), Arthur M. Schwartz, P.C.,
Denver, Colorado, for Plaintiff-Counter-Defendant-Appellee.

---

Before ANDERSON, KELLY, and HENRY, Circuit Judges.

---

KELLY, Circuit Judge.

Defendant/Counterclaimant-appellant, the City of Aurora, appeals from the district court's grant of summary judgment in favor of Plaintiff/Counterdefendant-appellee Z.J. Gifts. The district court invalidated a city zoning regulation requiring sexually oriented businesses to locate in industrially-zoned areas and enjoined its enforcement against Z.J. Gifts. Interpreting federal constitutional law, the district court held that the regulation was a content-based restriction of speech as applied to Z.J. Gifts' retail business which sold and leased adult videos and magazines for off-site viewing only. See Z.J. Gifts v. City of Aurora, 932 F. Supp. 1256, 1257-60 (D. Colo. 1996). We exercise jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1292(a)(1), reverse, and remand for proceedings consistent with this opinion.

Background

In early 1993, Aurora city officials became concerned that the city lacked regulatory and enforcement mechanisms to minimize negative effects resulting from sexually-oriented businesses locating within city limits. In response, the city attorney's office presented a draft ordinance regulating the operation and location of sexually-oriented businesses to the city council in September 1993.

In October 1993, Z.J. Gifts, a limited partnership, leased space in the Granada Park Shopping Center, located in a commercially-zoned area, and prepared the space for retail sales of adult novelties, magazines, and videos. After applying for sales tax and business licenses, the shop, named "Christie's," opened for business on October 30, 1994, and has

2

since been in continual operation. Unlike other adult uses, such as adult theaters, peep shows, and nude dance clubs, Christie's provides no on-site adult entertainment. The shop instead sells and rents adult materials to customers for viewing off premises.

After review of a thorough legislative record, deliberation and public hearings, the Aurora City Council enacted an ordinance regulating all sexually-oriented businesses, including adult bookstores, novelty shops and video stores, on December 13, 1994. The ordinance established comprehensive licensing, operating, and inspection requirements for sexually oriented businesses located within city limits. The ordinance further required sexually oriented businesses to locate in industrially-zoned areas, and prohibited them from locating within 1500 feet of churches, schools, residential districts or dwellings, public parks, and other sexually oriented businesses. See Aurora Mun. Code § 32.5-52; I Aplt. App. at 43-44.

Z.J. Gifts filed suit against the city, challenging the constitutionality of several provisions of the ordinance, including the zoning requirements. The city counterclaimed to enjoin Z.J. Gifts from operating Christie's in violation of the ordinance. The city also sought a declaration that Christie's operates in violation of the zoning provision of the ordinance and requested a permanent injunction barring Christie's from operating in that location. The parties filed cross-motions for summary judgment, and the district court granted Z.J. Gifts' motion. The district court held that as applied, the zoning provision requiring Christie's to locate within an industrially zoned area unconstitutionally

3

infringed Z.J. Gifts' free speech interests. Z.J. Gifts' remaining claims for relief were dismissed as moot. The city appealed.

Discussion

Where First Amendment interests are implicated, this court is obligated to make an independent examination of the record in its entirety to ensure the challenged regulation does not improperly limit expressive interests. See Revo v. Disciplinary Bd. of the Supreme Court, 106 F.3d 929, 932 (10th Cir.), cert. denied, 117 S. Ct. 2515 (1997). Thus, we review constitutional facts and conclusions of law de novo. See id. Similarly, we review a district court's grant of summary judgment de novo, using the standard provided in Fed. R. Civ. P. 56(c). See Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). Just as we may affirm a grant of summary judgment on any ground adequately supported by the record, we may direct that judgment be entered in favor of any moving party if the record adequately supports it. See Dickeson v. Quarberg, 844 F.2d 1435, 1444-45 n.8 (10th Cir. 1988).

We recognize that governmental limitations which limit expressive interests strike "[a]t the heart of the First Amendment." Turner Broadcasting System, Inc. v. FCC, 512 U.S. 622, 641 (1994). We are also aware that First Amendment doctrine must be informed by the complex tangle of social, political, and cultural interests in limiting speech as well as protecting it, for the tension between individual rights and community needs is at the core of every First Amendment issue. This tension is most pronounced in

4

cases like this one, where the speech regulated is unpopular and the community's interest in regulating it significant. We undertake review of the Aurora zoning provision against this backdrop of competing community and individual interests.

As an initial matter, the district court reviewed Aurora's ordinance as a content-based regulation of speech. See Z.J. Gifts, 932 F. Supp. at 1260. Recognizing that most ordinances regulating sexually oriented businesses are considered content-neutral, the court rejected that conclusion because it believed "none of the material relied on by the city council shows that the business of Christie's bears any relationship to [harmful secondary] effects." Id. at 1258. Though we recognize that "[d]eciding whether a . . . regulation is content-based or content-neutral is not always a simple task," Turner, 512 U.S. at 642, the district court's emphasis on the relationship between the materials used to justify the ordinance and the nature of Z.J Gifts' retail business is misplaced.

Content-based restrictions on speech, those which "suppress, disadvantage, or impose differential burdens upon speech because of its content," id., are subject to "the most exacting scrutiny." Id. Conversely, content-neutral regulations "pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue" because they are unrelated to the content of speech. Id. Content-neutral regulations are accordingly subject to intermediate scrutiny. See Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293 (1984). In determining whether a regulation is content-neutral, "[t]he government's purpose [in enacting the regulation] is the controlling

consideration." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). If the regulation "serves purposes unrelated to the content of expression" it is considered neutral, "even if it has an incidental effect on some speakers or messages but not others." See id. (citing City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47-48 (1986)).

The Supreme Court has long held that city zoning ordinances which place limits on the location of adult uses are valid exercises of the city's police power. See Young v. American Mini Theatres, Inc., 427 U.S. 50, 62-63 (1976). Though such regulations treat adult uses differently from other uses based on their sexually explicit nature, they are "designed to prevent crime, . . . maintain property values, . . . and preserve . . . the quality of urban life." Renton, 475 U.S. at 48 (quotation marks omitted). Because ordinances zoning adult uses are intended to curb the secondary effects of those uses on surrounding communities and burden free speech interests only incidentally, they are generally reviewed as content-neutral regulations subject to a less stringent standard of review. See id. at 48-50.

The record clearly establishes Aurora's purpose in enacting the ordinance: to regulate the harmful secondary effects of sexually oriented businesses. The preamble to the ordinance indicated the City's intent to "protect[ ] [its] citizens from increased crime; preserve[ ] the quality of life, property values, and character of neighborhoods and businesses; deter[ ] the spread of urban blight; and protect[ ] against the spread of sexually transmitted diseases . . . ." I Aplt. App. at 126; see Renton, 475 U.S. at 49.

6

Further, even if Z.J. Gifts could support its allegation that "[m]embers of the Aurora City Council[] openly avowed . . . that the ordinance was enacted for the express purpose of closing Plaintiff's business[,]" Aplee. Br. at 4, "'alleged illicit . . . motive[s]'" hidden in legislators' comments will not support a determination that a restriction is content-based. Renton, 475 U.S. at 48 (quoting United States v. O'Brien, 391 U.S. 367, 383-84 (1968)).

Most importantly, we disagree that the ordinance's content-neutrality is affected by the city's reliance on studies utilizing slightly dissimilar businesses. As the Eighth Circuit noted in a case remarkably similar to this one, examining the similarity of the businesses utilized in the studies relied on to the businesses regulated in determining an ordinance's content-neutrality "confuses distinct aspects of the City of Renton test." ILQ Investments, Inc. v. City of Rochester, 25 F.3d 1413, 1416 (8th Cir.), cert. denied, 513 U.S. 1017 (1994). The district court's inquiry may well be relevant in determining whether the ordinance is "narrowly tailored to regulate only those adult uses shown to have caused adverse secondary effects" under Renton. Id. at 1417. But where, as here, the studies relied upon adequately support the city's purpose in enacting the ordinance-- regulating the harmful secondary effects associated with sexually oriented businesses--the government's regulation of such businesses is "justified without reference to the content of the regulated speech." Rock Against Racism, 491 U.S. at 791 (emphasis in original). Thus, we are satisfied that differences in the mode of delivery of sexually oriented materials are constitutionally insignificant for purposes of determining an ordinance's

7

content-neutrality.  See Renton, 475 U.S. at 49 ("[W]ith respect to businesses that purvey sexually explicit materials, zoning ordinances designed to combat the undesirable secondary effects of such businesses are . . . 'content-neutral.'") (emphasis added).  The city need only rely upon "evidence . . . reasonably believed to be relevant to the problem that the city addresses."  Id. at 51-52 (emphasis added).  If the city can show that the ordinance affects "that category of [businesses] shown to produce the unwanted secondary effects," id. at 52, the ordinance will stand.  So long as cities do not use "the power to zone as a pretext for suppressing expression," id. at 54 (citing Young, 427 U.S. at 84 (Powell, J. concurring)), attempts to regulate the adverse effects associated with sexually oriented businesses are properly classified as content-neutral.

Given the uncontroverted sexual nature of Z.J. Gifts' business, we are convinced the city has met its burden.  The record indicates several of the studies examine the effects of adult businesses or sexually oriented businesses generally.  Significantly, at least three of these studies examine the effects of adult bookstores on surrounding communities.[1]  Although Z.J. Gifts argues and attempts to prove that all other adult

---

[1]See I Aplt. App. at 158 (summary of Garden Grove, California land use study reviewing impact of adult businesses); id. at 161 (summary of Austin, Texas land use study reviewing crime rates, property values, and trade area characteristics for areas surrounding adult bookstore, theater, and topless bar); id. at 162 (summary of Oklahoma City, Oklahoma study examining effect of adult bookstore on property values and crime); id. at 163 (summary of Indianapolis, Indiana study examining the effects of sexually oriented businesses on crime rates and property values in surrounding areas; report concludes that "even relatively . . . passive use[s] such as . . . adult bookstore[s] . . . have a serious negative effect on their immediate environs."); id. at 166 (summary of

bookstores provide some form of on-premises viewing of sexually explicit materials, see Aplee. Br. at 13, 16, 22, II Aplt. App. at 344 (Jackson aff.), we think the record fully supports the city's regulation of sexually oriented businesses providing both on- and off-site viewing of sexually explicit materials.

Properly analyzed as a content-neutral regulation, Aurora's zoning ordinance survives constitutional scrutiny, and the city is entitled to relief, if the city can establish the ordinance is narrowly tailored to serve a significant governmental interest and leaves open ample alternative channels of communication. See Renton, 475 U.S. at 45; Rock Against Racism, 491 U.S. at 791; Clark, 468 U.S. at 293. The district court, however, analyzed the ordinance under the test set out in O'Brien. 391 U.S. at 377. O'Brien provides that content-neutral regulations having an incidental impact on expressive conduct are constitutional if they further an important or substantial governmental interest and restrict First Amendment freedoms no greater than essential to further the interest. See id. We need not choose between the two tests, however, because the O'Brien analysis "is, in the last analysis, . . . little, if any, different from the standard applied to time, place or manner restrictions." Clark, 468 U.S. at 298. Review of the record and the

---

Minneapolis, Minnesota land use report concluding "concentrations of sexually oriented businesses have [a] significant relationship to higher crime and lower property values."); id. at 168 (summary of Whittier, California study of effects of sexually oriented businesses, including two adult bookstores, on surrounding residential and commercial areas); id. at 169 (summary of Amarillo, Texas study of adult businesses, including "bookstores . . . with publications featuring nudity and explicit sexual activities," concluding that such businesses lead to increases in street crime).

legal principles which govern the city's claims indicates that the city prevails under either standard.

Z.J. Gifts does not in any real sense question the substantiality of Aurora's interests in preventing crime and disease, protecting property values, and preserving the quality of life of the city's residents. Indeed, the district court recognized that the city had demonstrated "the legitimacy of its concern" regarding adult uses which provide on-site adult entertainment, but not to those which provide adult materials for off-site consumption. See Z.J. Gifts, 932 F. Supp. at 1257-58. As noted earlier, this distinction is constitutionally irrelevant in determining whether Aurora's interests are important or substantial, particularly in light of the Court's strong statements regarding the government's interest in regulating such businesses in Young and Renton. Our analysis of Aurora's interest in regulating sexually oriented businesses thus remains unaffected by the district court's distinction between off-site and on-site viewing of sexually explicit materials.

To the extent Z.J. Gifts argues that the city has not "demonstrate[d] that the recited harms are real, not merely conjectural," Turner, 512 U.S. at 664, we disagree. Aurora need not wait for sexually oriented businesses to locate within its boundaries, depress property values, increase crime, and spread sexually transmitted diseases before it regulates those businesses. It may rely on the experience of other cities to determine whether the harms presented by sexually oriented businesses are real and should be

10

regulated. See Renton, 475 U.S. at 51-52. In other words, the city may control a perceived risk through regulation. The Court has long held, and we agree, that Aurora's stated governmental interests in circumscribing the adverse secondary effects of sexually oriented businesses "must be accorded high respect." Renton, 475 U.S. at 50 (quoting Young, 427 U.S. at 71); ILQ Investments, 25 F.3d at 1416.

Similarly, Z.J. Gifts cannot dispute that Aurora's ordinance allows for reasonable alternative avenues of communication. Sexually oriented businesses may locate within the city's industrial zones, which comprise approximately 10.9 percent of the city's area. See I Aplt. App. at 120. Approximately 3,200 acres of this land--fully 3.6 percent of the city's total area--are located near existing water and sewer services. See id. Thus, Z.J. Gifts is left with more land on which to relocate than was found to be adequate in Renton and its progeny. See, e.g., Renton, 475 U.S. at 53 (five percent of city's land "in all stages of development from raw land to developed, industrial, warehouse, office and shopping space" available); S&G News, Inc. v. City of Southgate, 638 F. Supp. 1060, 1066 (E.D. Mich. 1986), aff'd 819 F.2d 1142 (6th Cir. 1987) (2.3 percent of city's land available); Lakeland Lounge of Jackson, Inc. v. City of Jackson, 973 F.2d 1255, 1260, 1262-63 (5th Cir. 1992) (majority opinion and Politz, C.J., dissenting), cert. denied 507 U.S. 1030 (1993) (1.2 percent of city's land available).

Z.J. Gifts' only remaining argument is that Aurora's zoning provision is not narrowly tailored to further the interests asserted. See Renton, 475 U.S. at 52-53;

11

O'Brien, 391 U.S. at 377. The district court held that Aurora had "far less restrictive means of achieving [its] purpose with respect to a business like Christie's [which provides only off-site viewing of adult materials] than [a] zoning provision that would require it to relocate . . ." Z.J. Gifts, 932 F. Supp. at 1260. We believe the district court construed the narrow tailoring inquiry too narrowly, and held Aurora to a far more stringent standard than required by Renton and O'Brien.

The district court derived its "least restrictive means" language from O'Brien, which stated that an incidental restriction on free speech should be "no greater than is essential to the furtherance of [the] interest." O'Brien, 391 U.S. at 377. In recent cases, however, the Court elaborated on O'Brien, explicitly holding that time, place or manner regulations on protected speech must be narrowly tailored, but "need not be the least restrictive or least intrusive means of doing so." Rock Against Racism, 491 U.S. at 798. Instead, "[s]o long as the means chosen are not substantially broader than necessary," an ordinance is narrowly tailored if the regulation "promotes a substantial governmental interest that would be achieved less effectively absent the regulation." Id. at 799, 800; see ILQ Investments, 25 F.3d at 1417-18.

This reading of O'Brien's narrow tailoring inquiry harmonizes with that crafted by the Court in Renton. In regulating the harmful effects of sexually oriented businesses, the city need not address all the potential problems created by adult businesses at once. See Renton, 475 U.S. at 52-53. Nor is it limited to one method of regulation over another in

12

attempting to curb harmful secondary effects. See id. at 53 ("Cities may regulate adult theaters by dispersing them . . . or by effectively concentrating them."). Instead, Renton's constitutional framework grants the city broad discretion to choose the means and scope of its regulation of sexually oriented businesses.

The Court's interpretation of the narrow tailoring prong in time, place and manner analyses recognizes the judiciary's limited role in reviewing content-neutral limitations on speech. "It is not [the court's] function to appraise the wisdom of [the city's] decision[.]" Renton, 475 U.S. at 53 (citing Young, 427 U.S. at 71). Instead, because legislative bodies are entitled to "reasonable inferences" suggested by the legislative record before them, see Turner, 512 U.S. at 666, the court simply determines whether the ordinance, as promulgated, "affects only categories of businesses reasonably believed to produce at least some of the unwanted secondary effects" the city seeks to regulate. ILQ Investments, 25 F.3d at 1418. If so, the court's review is complete, and it may not substitute its own judgment for that of the legislature, usurping the legislative body's policy-making function. Where the legislative record validates the legislature's judgment, our obligation to exercise independent judgment "is not a license to . . . replace [legislative] factual predictions with our own." Turner, 512 U.S. at 666. Courts must allow cities like Aurora "reasonable opportunity to experiment with solutions to admittedly serious problems." Young, 427 U.S. at 71 (emphasis added).

In invalidating Aurora's reasonable legislative choices, the district court exceeded

13

the limits imposed by Renton and O'Brien. Unlike other zoning provisions held unconstitutional, Aurora's ordinance does not attempt to regulate businesses which have a minimal or nonexistent connection to sexually oriented entertainment. See, e.g., Schad v. Borough of Mount Ephraim, 452 U.S. 61, 74-77 (1981) (invalidating ordinance prohibiting all live entertainment within city's limits); Faraone v. City of East Providence, 935 F. Supp. 82, 88-89 (D.R.I. 1996) (granting preliminary injunction against enforcement of ordinance prohibiting rental of "adult oriented x-rated" videotapes on holidays and Sundays by businesses having only ten percent x-rated or adult oriented videos in total video rental inventory); World Wide Video v. City of Tukwila, 816 P.2d 18, 21 (Wash. 1991) (en banc), cert. denied, 503 U.S. 986 (1992) (invalidating ordinance regulating sexually oriented businesses, defined to include businesses with ten percent or more of their stock in trade consisting of sexually oriented merchandise). Nor does the city seek to justify its actions with a completely barren legislative record. See, e.g., Discotheque, Inc. v. City Council of Augusta, 449 S.E.2d 608, 609-10 (Ga. 1994) (summary judgment improper in favor of City where City produced no probative evidence of experience of other municipalities regarding negative secondary effects of sexually oriented businesses); Quetgles v. City of Columbus, 450 S.E.2d 677, 678 (Ga. 1994), cert. denied, 514 U.S. 1083 (1995) (same). Instead, Christie's, and businesses like it, are indisputably sexually oriented businesses--specifically, "adult bookstores" as defined by the ordinance. See Aurora Mun. Code § 32.5-2 (adult bookstore means "a commercial

14

establishment which devotes a significant or substantial portion of its stock-in-trade . . . to the sale, rental or viewing . . . of books, magazines, periodicals, . . . films, motion pictures, video cassettes, . . . or other visual representations . . . of 'specified sexual activities' or 'specified anatomical areas.'"); I Aplt. App. at 263-75 (Inventory list for Christie's); id. at 119 (Anderson aff.). The legislative record before the city fully supported the city's concerns regarding the negative secondary effects caused by sexually oriented businesses, such as decreased property values and increased crime, which were precisely the problems Aurora sought to regulate by enacting the ordinance. See I Aplt. App. 124-26 (Preamble to Aurora Mun. Code § 32.5). In short, even if, as Z.J. Gifts claims, Christie's is "a new type of adult business, it may not avoid time, place and manner regulation that has been justified by studies of the secondary effects of reasonably similar businesses." ILQ Investments, 25 F.3d at 1418 (footnote omitted).

On this record, Aurora's ordinance satisfies Renton and O'Brien, as it promotes the city's well-established interest in regulating harmful secondary effects caused by sexually oriented businesses reasonably similar to those studied by other municipalities without unnecessarily regulating dissimilar businesses. We accordingly REVERSE the district court's judgment. On REMAND, the district court shall vacate its judgment and conduct further proceedings consistent with this opinion.

15