EBEL, J.,
concurring, and joined by McWilliams, j., and lucero, j.
I agree entirely with the result that the majority opinion reaches, and I join most of its reasoning. Along with the majority (Maj. Op. at 1167), I conclude that Plaintiff-Appellant Abilene Retail # 30, Incorporated’s (“Abilene Retail”) First Amendment claim should be remanded for a trial. I would reach this conclusion, however, at a different step in the analysis than does the majority.
Like the majority, I conclude that the County’s challenged ordinance is a content-neutral time, place or manner restriction on speech protected by the First Amendment and, thus, must pass intermediate scrutiny to be valid. (Maj. Op. at 1172-73.) We inquire, therefore, whether the ordinance is “narrowly tailored to serve a significant government interest, and if it leaves open ample alternative channels of communication.” Doctor John’s, Inc. v. City of Roy, 465 F.3d 1150, 1164 (10th Cir.2006) (quotation omitted); see also City of Renton v. Playtime The-atres, Inc., 475 U.S. 41, 50, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). The parties in this case do not dispute that the County’s ordinance does leave open adequate alternative channels of communication. And “[i]t is well established that combating the secondary effects of adult businesses is a significant governmental interest.” Doctor John’s, 465 F.3d at 1164 (quotation omitted). The relevant question before us, therefore, is whether the County’s ordinance is narrowly tailored to serve that interest. In addressing this question, we apply the burden-shifting evidentiary analysis set forth in City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 434, 438-39, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002) (plurality).
Alameda Books requires that Defendants-Appellees (“the County”), in justifying the restrictions the County has placed on protected speech, bear the initial burden of presenting “evidence that is ‘reasonably believed to be relevant’ for demonstrating a connection between [the regulated] speech and a substantial, independent government interest.” Id. at 438, 122 S.Ct. 1728 (quoting City of Ren-ton, 475 U.S. at 51-52, 106 S.Ct. 925); see also id. at 437, 122 S.Ct. 1728. If the *1181 County is able to do so, the burden shifts to Abilene Retail to “east direct doubt” on the County’s “rationale, either by demonstrating that the [County’s] evidence does not support its rationale or by furnishing evidence that disputes' the [County’s] factual findings” underlying its decision to enact the challenged ordinance. Id. at 438-39, 122 S.Ct. 1728. If Abilene Retail “succeed[s] in casting doubt on the [County’s] rationale in either manner, the burden shifts back to the [County] to supplement the record with evidence renewing support for a theory that justifies its ordinance.” Id. at 439, 122 S.Ct. 1728.
Although the majority in this case decides that the County has failed to meet its initial burden under Alameda Books (Maj. Op. at 1174, 1175-76, 1178 n. 13), I disagree. I would, however, go on to conclude that Abilene Retail has been able to “cast direct doubt” on the County’s rationale sufficient to require a trial. It is on that basis that I would remand Abilene Retail’s First Amendment claim.
I. Whether the County has met its initial burden of presenting evidence “reasonably believed to be relevant” to demonstrate a connection between its regulation of protected speech and a substantial government interest.
The County’s stated purpose in enacting its ordinance restricting the location and operation of sexually oriented businesses is to prevent the negative secondary effects stemming from such businesses.[1] Under Alameda Books, then, the County must assert evidence that it “reasonably believed to be relevant” to demonstrate a connection between that purpose and the ordinance the County enacted regulating protected speech. See 535 U.S. at 438, 122 S.Ct. 1728. In this case, the' County sought to justify its ordinance by citing to a number of judicial opinions from other cases, finding that sexually oriented businesses can ’ have adverse secondary effects on their surrounding communities, as well as a number of “seemingly pre-packaged studies” of the secondary effects .generally stemming from various types of sexually oriented businesses located in other cities and counties across the nation. Heideman v. S. Salt Lake City, 348 F.3d 1182, 1197 (10th Cir.2003) (noting “it is common in these cases for cities to cite to and rely on seemingly pre-packaged studies, as well as the findings of courts in other cases”). Unlike the majority opinion, I would conclude that this evidence is sufficient for the County to meet its initial burden under Alameda Books.
Both the Supreme Court and this court have consistently recognized that the government’s burden at this initial step in the Alameda Books’ analysis is very light. See Alameda Books, 535 U.S. at 451, 122 S.Ct. 1728 (Kennedy, J., concurring) (noting “that very little evidence , is required” *1182 for the government to support the rationale on which its ordinance rests); Doctor John’s, 465 F.3d at 1166 (noting government’s initial burden is “slight”); Heideman, 348 F.3d at 1198 (suggesting “City’s initial burden to present empirical support for its conclusions is minimal”); see also Alameda Books, 535 U.S. at 437-38, 439-40, 122 S.Ct. 1728.[2]
Our deference to the evidence presented by the [government] is the product of a careful balance between competing interests. On the one hand, we have an obligation to exercise independent judgment when First Amendment rights are implicated. On the other hand, we must acknowledge that the [local government] is in a better position than the Judiciary to gather and evaluate data on local problems.
Alameda Books, 535 U.S. at 440, 122 S.Ct. 1728 (quotation, citation omitted).
In order to meet its initial burden, therefore, the County need not conduct its own studies or “produce evidence independent of that already generated by other cities” in support of its ordinance, “so long as whatever evidence the [government] relies upon is reasonably believed to be relevant to the problem that the [government] addresses.” City of Renton, 475 U.S. at 51-52, 106 S.Ct. 925; see also Doctor John’s, 465 F.3d at 1164-65; Heideman, 348 F.3d at 1197.
Further, the County is not required to produce evidence “that rules out every [other] theory” linking the negative secondary effects at which its ordinance is aimed to other possible causes, apart from the presence of adult businesses. Alame-da Books, 535 U.S. at 437, 122 S.Ct. 1728. That is, the government does not have “to prove that its theory” linking the negative effects it seeks to eliminate to sexually oriented businesses “is the only [theory] that can plausibly explain the data” on which the County relies. Id. at 437-38, 122 S.Ct. 1728. Nor does the government have to assert empirical data that shows that its ordinance will succeed in reducing the negative secondary effects at which it is aimed. See id. at 439, 122 S.Ct. 1728. Government entities “must be given a reasonable opportunity to experiment with solutions to address the secondary effects of protected speech.” Id. (quotation omitted).
Of course, “[t]his is not to say that [the government] can get away with shoddy data or reasoning. The [government’s] evidence must fairly support [the] rationale for its ordinance.” Id. at 438, 122 S.Ct. 1728. The County’s evidence does so here.
Courts have consistently upheld ordinances based upon the same type of evidence with which the County has initially supported its ordinance in this case. See City of Renton, 475 U.S. at 50-52, 106 S.Ct. 925 (upholding ordinance based upon a judicial opinion entered in another case discussing the negative secondary effects of sexually oriented businesses, and a study of such secondary effects conducted in another location); Heideman, 348 F.3d at 1197-98 (citing Barnes v. Glen Theatre, Inc., 501 U.S. 560, 584, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (Souter, J., concur *1183 ring), and recognizing government can rely on court-made findings in other cases that sexually oriented businesses can have negative secondary effects). Moreover, this court has previously held that a local government met its initial burden- under Alameda Books by relying upon prepackaged reports and case law almost identical to that relied upon by the County in this case. See Doctor John’s, 465 F.3d at 1165-66 & 1165 n. 17, 1166 n. 18; Heideman, 348 F.3d at 1186-87, 1186 & n. 5, 1199-1200. So have other circuits. See Andy’s Restaurant & Lounge, Inc. v. City of Gary, 466 F.3d 550, 555 (7th Cir.2006) (holding City met its burden by asserting “numerous studies evidencing the secondary effects of sexually oriented businesses”); Deja Vu of Cincinnati, L.L.C. v. Union Twp. Bd. of Trustees, 411 F.3d 777, 791 (6th Cir.2005) (reh’g en banc) (holding township’s evidence, twelves studies from different cities, as well as the township administrator’s testimony of documented instances of intoxicated patrons causing serious trouble in adult cabarets, was sufficient to support resolution requiring caba-: rets that do not serve alcohol to close at midnight); Zibtluda, 411 F.3d at 1286-87 (holding County sufficiently supported its ordinance by citing to studies from different locations, conducting a hearing at which the county commissioners heard citizens’ testimony, as well as testimony from experts in law enforcement and economics); Gammoh v. City of La Habra, 395 F.3d 1114, 1126 (9th Cir.2005) (holding City met its initial burden by relying upon judicial decisions in other cases', reports and studies from other jurisdictions, and testimony of the City’s vice officers and nude dancers); Ben’s Bar, Inc. v. Village of Somerset, 316 F.3d 702, 725-26 (7th Cir.2003) (holding City met its initial ‘burden by relying upon studies, reports and judicial decisions from other locations).
In fact, in the few cases in which courts have held that a government failed to meet its initial burden under the Alameda Books’ burden-shifting analysis, the local government did not present any evidence at all justifying its decision to enact an ordinance regulating - adult businesses. See Illusions-Dallas, 482 F.3d at 312-15 (holding State had failed to meet its “very light” initial burden because “the record is completely devoid of any evidence that a secondary effects problem exists or that the [challenged ordinance] furthers that interest”); White River Amusement Pub, Inc. v. Town of Hartford, 481 F.3d 163, 171-73 (2d Cir.2007) (holding town failed to meet its initial burden because defendants could “not show that they relied on relevant evidence of negative effects before enacting the Ordinance”); R.V.S., 361 F.3d at 411-13 (holding City had failed to meet its initial burden, which requires “very little evidence,” because “[t]he record is devoid of evidence connecting [the adult businesses] and the secondary effects that allegedly motivated the Ordinance’s adoption”); Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 337 F.3d 1251, 1266-69 (11th Cir.2003) (holding County had failed to meet its initial burden because “the record reveals that the Manatee County Board of County Commissioners, when enacting Ordinance 98-16, failed to rely on any evidence whatsoever that might support the conclusion that the ordinance was narrowly tailored to serve the County’s interest in combating secondary effects”).
Abilene Retail argues that the County’s evidence in this case is insufficient even at this initial step in the analysis because the cases and reports upon which the County relies primarily concern adult businesses that offered only on-site, or both on- and off-site, adult entertainment, whereas Abilene Retail offers only off-site adult entertainment. But at this initial stage in the analysis, those distinctions are of no moment, so long as the County could reason *1184 ably believe the reports and case law upon which it relied were relevant to demonstrate that the County’s regulating sexually oriented businesses will reduce adverse secondary effects on the community. See Doctor John’s, 465 F.3d at 1165-69 (citing Z.J. Gifts D-2, L.L.C. v. City of Aurora, 136 F.3d 683 (10th Cir.1998)). The County can meet its “slight initial burden, even if the studies” on which it relies do not address sexually oriented businesses “precisely like” Abilene Retail’s store. Id. at 1166.
The majority would conclude that the County’s pre-packaged studies and case law are insufficient to meet the County’s initial evidentiary burden because the County’s evidence concerns local governments’ experiences with, sexually oriented businesses in an urban setting, while the County is a rural, sparsely populated area. This may be a valid distinction to draw at the later stages of the Alameda Books’ analysis. Notwithstanding our obligation in the First Amendment context “to make an independent examination of the record in its entirety to ensure the challenged
regulation does not improperly limit expressive interests,” Z.J. Gifts, 136 F.3d at 685, I do not think that this rural/urban distinction is sufficient at the initial stage of our analysis. The evidence the County asserted was sufficient to permit the County to draw the reasonable conclusion that the secondary effects that other communities across the country have experienced related to sexually oriented businesses would also occur in this County. That is all Alameda Books requires at this initial analytical step. In fact, in Alameda Books, the Supreme Court held that the circuit court had erred in not permitting the local government, at this initial stage in the analysis, to draw a reasonable inference from the evidence it had before it, even though there were other reasonable explanations of the evidence and other reasonable inferences that the government could have drawn instead.[3] See Alameda Books, 535 U.S. at 436-38, 122 S.Ct. 1728. A local government, therefore, can meet its “slight initial burden, even if the studies” on which it relies do not address sexually oriented businesses “precisely' like” *1185 those being regulated by the challenged ordinance. Doctor John’s, 465 F.3d at 1166.
For these reasons, then, I conclude that, in this case, the County has presented sufficient evidence, linking its ordinance restricting the location and operation of sexually oriented businesses to the County’s substantial interest in eliminating adverse secondary effects stemming from such businesses, to meet its minimal initial burden under Alameda Books.[4],
II. Whether Abilene Retail was able to cast direct doubt on the County’s rationale underlying its decision to enact the challenged ordinance.
Because the County has met its initial burden under Alameda Books, the burden shifts to Abilene Retail to “cast direct doubt” on the County’s rationale underlying its ordinance. Alameda Books, 535 U.S. at 438, 122 S.Ct. 1728. Abilene Retail can do so in one of two ways. See id. at 438-39, 122 S.Ct. 1728. It can demonstrate that the County’s evidence does not support its rationale that restricting the location and operation of adult businesses reduces the adverse secondary effects resulting from sexually oriented businesses. See id. Or Abilene Retail can furnish evidence that disputes the County’s factual findings justifying its ordinance. See id. at 439, 122 S.Ct. 1728. In this case, Abilene Retail has been able to do both.
A. Whether Abilene Retail was able to demonstrate that the County’s evidence does not support the rationale underlying the County’s ordinance.
The County’s rationale in enacting this challenged ordinance, based upon the case law and studies the County had before it, is that sexually oriented businesses can cause negative secondary effects on the surrounding community, and the restriction that the'County’s ordinance places on sexually oriented businesses is narrowly tailored to prevent those adverse effects. Abilene Retail challenges that rationale that the County has drawn from the County’s pre-packaged evidence by presenting its own evidence indicating instead that *1186 sexually oriented businesses do not cause the adverse secondary effects the County fears. Specifically, Abilene Retail offers the opinion of its expert witness, Dr. Daniel Linz, Ph.D. Dr. Linz has conducted five studies of his own indicating that sexually oriented businesses do not produce the negative secondary effects that the County sought to prevent by enacting its ordinance.[5] More importantly, perhaps, Abilene Retail also presented evidence that its store has in fact not produced any of the negative secondary effects that the County’s ordinance was designed to eliminate.[6] Cf. Peek-A-Boo Lounge, 337 F.3d at 1270 (concluding plaintiffs had successfully cast direct doubt on the County’s rationale by presenting evidence of the County’s actual experience with adult businesses, which contradicted the evidence on which the County had relied). This evidence is sufficient to cast direct doubt on the County’s evidence on which the County based its rationale that regulating sexually oriented businesses will eliminate the adverse secondary effects those businesses cause.[7]
*1187 B. Whether Abilene Retail was able to furnish evidence disputing the County’s factual findings justifying its ordinance.[8]
In addition to the five studies on which Abilene Retail relies to show that sexually oriented businesses do not cause the negative secondary effects that the County fears, Abilene Retail also presented evidence calling into doubt the validity of the County’s legislative factual findings indicating adult businesses do cause adverse secondary effects.[9] Specifically, Abilene Retail presented the opinion of its expert, Dr. Linz, that the studies and reports on which the County relies are invalid or at least unreliable. In offering that opinion, Dr. Linz addresses each of the County’s reports and studies individually and points to specific problems he sees with each study or report that call its results or conclusions into question. Furthermore, Dr. Linz has bolstered this opinion with an academic, peer-reviewed article that he wrote with others challenging the validity of the County’s studies. This evidence, too, sufficiently casts direct doubt on whether the County could have reasonably believed its own evidence, underlying the County’s legislative findings, was relevant to justify enacting the challenged ordinance. Cf. Peek-A-Boo Lounge, 337 F.3d at 1271 n. 20 (relying in part on similar evidence to conclude that the plaintiffs had created a genuinely disputed issue of material fact sufficient to survive summary judgment).
C. Conclusion
For the foregoing reasons, I would conclude that Abilene Retail’s evidence is sufficient to cast direct doubt on the County’s rationale underlying its decision to enact the challenged ordinance restricting the location and operation of sexually oriented businesses, in an effort to eliminate the adverse secondary effects that adult businesses cause. That is particularly true given that, in reviewing summary judgment decisions, we must “view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party,” Reeves v. Churc-hich, 484 F.3d 1244, 1250 (10th Cir.2007) *1188 (quotation omitted), which in this case is Abilene Retail.
III. Whether the County was able to supplement the record with evidence renewing support for a theory that justifies its ordinance.
At this point in the Alameda Books’ analysis, the burden shifts back to the County “to supplement the record with evidence renewing support for a theory that justifies its ordinance.” 535 U.S. at 439, 122 S.Ct. 1728. The County has done so in this case, offering one of its expert witness’s opinion that the studies and opinions of Abilene Retail’s expert, Dr. Linz, are themselves invalid and unreliable. The County’s expert, Dr. McCleary, further responds that the reports on which the County relies, including at least one study conducted by Dr. McCleary himself, are valid and reliable. While the County’s evidence, then, does supplement the other evidence it relied upon to justify enacting the challenged ordinance, this supplemental evidence, rather than resolving the evi-dentiary dispute in this case, further exacerbates it.
This is best illustrated by the arguments the County asserts in challenging Abilene Retail’s evidence. The County argues, for example, that Abilene Retail’s expert, Dr. Linz, has conducted only “industry-funded studies,” is not a credible witness, and has been found so by several courts in other cases. But, at the summary judgment stage of litigation, a court cannot decide that Dr. Linz (or Dr. McCleary, for that matter) is not a credible witness. See Norton v. City of Marietta, 432 F.3d 1145, 1154 (10th Cir.2005) (per curiam). Such a credibility determination requires a trial and a fact finder charged with making such determinations. See Plotke v. White, 405 F.3d 1092, 1103 (10th Cir.2005). The battle of the experts that the parties present to us requires a trial and a trier of fact to resolve. See Phillips v. Cohen, 400 F.3d 388, 399 (6th Cir.2005); Goldman v. Standard Ins. Co., 341 F.3d 1023, 1036 (9th Cir.2003); Michaels v. Avi-tech, Inc., 202 F.3d 746, 752 (5th Cir.2000).
IV. Conclusion
The Supreme Court has declared that whether a community’s ordinance regulating sexually oriented businesses is narrowly tailored to serve a substantial government interest is an evidentiary question. Alameda Books, 535 U.S. at 437-42, 122 S.Ct. 1728; City of Renton, 475 U.S. at 50-52, 106 S.Ct. 925; see Heideman, 348 F.3d at 1197 (noting that “[t]he standards for the quantity and nature of empirical evidence needed to uphold a city ordinance based on the negative secondary effects of sexually oriented speech in general ... are continuing to evolve”); see also Illusions—Dallas, 482 F.3d at 312-15; Fantasy Ranch Inc. v. City of Arlington, 459 F.3d 546, 559 (5th Cir.2006); R.V.S., 361 F.3d at 408. Applying that Supreme Court precedent to this case, I conclude the County has met its initial burden of producing some evidence linking its ordinance restricting the location and operation of sexually oriented businesses with the County’s stated goal of preventing the secondary effects caused by such businesses. But I further conclude that Abilene Retail has been able to assert sufficient evidence of its own, contradicting and disputing the validity of the County’s evidence and, thus, the County’s rationale underlying its ordinance, to create a triable evidentiary dispute. And the supplemental evidence that the County offered is not sufficient to dispel this triable eviden-tiary dispute. I reach this conclusion even while recognizing that the issue to be presented at trial is not whether sexually oriented businesses do, in fact, cause the secondary effects that the County seeks to eliminate through its ordinance, but rather *1189 only whether the County’s Board of Commissioners had evidence from which it could reasonably infer that sexually oriented businesses may cause adverse secondary effects in the surrounding community, and that its ordinance restricting adult businesses is narrowly tailored to eliminate those adverse effects.

. The ordinance states its underlying rationale to be the following:
It is the purpose of this ordinance to regulate sexually oriented businesses in order to promote the health, safety, and general welfare of the citizens of the County, and to establish reasonable and uniform regulations to prevent the deleterious secondary effects of sexually oriented businesses within the County. The provisions of this ordi- ■ nance have neither the purpose nor effect of imposing a limitation or restriction on the content or reasonable access to any communicative materials, including sexually oriented materials. Similarly, it is neither the intent nor effect of this ordinance to restrict or deny access by adults to sexually oriented materials protected by the First'Amendment, or to deny access by the- distributors and exhibitors of sexually oriented entertainment to their intended market. Neither is it the intent nor effect of this ordinance to condone or legitimize distribution of obscene material.

. Other circuits have likewise recognized that Alameda Boolcs’ initial burden is minimal. See Illusions-Dallas Private Club, Inc. v. Steen, 482 F.3d 299, (5th Cir.2007) (noting that, although government must assert "some” evidence to meet its initial burden, that burden is "very light” and "minimal”); Zibtluda, LLC v. Gwinnett County ex rel. Bd. of County Comm’rs, 411 F.3d 1278, 1286-87 (11th Cir.2005) (describing government’s burden as "modest,” “low,” and not "rigorous”); World Wide Video of Washington, Inc. v. City of Spokane, 368 F.3d 1186, 1194 (9th Cir.2004) (noting government’s evidence need not be overwhelming to meet its initial burden); R.V.S., L.L.C. v. City of Rockford, 361 F.3d 402, 411 (7th Cir.2004) (noting government's burden is "not particularly demanding”).

. Alameda Books considered the validity of the City of Los Angeles’ ordinance prohibiting "the establishment or maintenance of more than one adult entertainment business in the same building, structure or portion thereof." 535 U.S. at 429, 122 S.Ct. 1728 (quotation omitted). To justify this restriction, the City relied upon a study conducted by the Los Angeles police department indicating that, during a ten-year period, "certain crime rates grew much faster in Hollywood, which had the largest concentration of adult establishments in the city, than in the city of Los Angeles as a whole.” Id. at 435, 122 S.Ct. 1728. The circuit court reviewing this ordinance held that this study did not reasonably support the City's enacting an ordinance prohibiting more than one adult-establishment in the same building, because the study did not address that particular circumstance. See id. The Supreme Court, however, concluded that the circuit court had erred in refusing to allow the City to draw this reasonable inference from that study, even if the study might also support drawing other reasonable inferences. See id. at 436-38, 122 S.Ct. 1728. "The Court of Appeals' analysis ... implicitly requires the city to prove that its theory is the only one that can plausibly explain the data.” Id. at 437-38, 122 S.Ct. 1728. The Court concluded this was error, and further indicated that it is instead up to those challenging the ordinance to “provide evidence that refutes the city’s interpretation of the study.” Id. at 438, 122 S.Ct. 1728.
Similarly, in this case, the County can reasonably infer that the adverse secondary effects that other, more urban communities have experienced in relation to sexually oriented businesses would also occur in the County’s more rural, less populated community. That is sufficient for the County to meet its minimal initial evidentiary burden under Alameda Books and shifts the burden to Abilene Retail to present evidence challenging the County's interpretation of the law and reports upon which the County relies.

. If, as the majority instead concludes, the County has failed to meet its initial burden, then the result would not be to remand this claim for a trial, as the majority does. (Maj. Op. at 1174, 1175-76, 1178 n. 13 (holding that the County has failed to meet its initial burden and so there is a dispute of material fact as to whether the County could reasonably believe that the evidence on which it relied to justify enacting the challenged ordinance was relevant).) In that case, there would be no genuinely disputed factual issue to be tried. Rather, if the County has failed as a matter of law to meet its initial burden of asserting some minimal evidence connecting the ordinance it enacted with the County’s stated objective to eliminate adverse secondary effects stemming from adult businesses, then the evidentiary burden under Alameda Books would never shift to require Abilene Retail to produce evidence creating a genuinely disputed factual issue. The ordinance would instead simply be invalid. See White River Amusement Pub, 481 F.3d at 165, 173 (affirming summary judgment for the plaintiff, where the government failed to prove its legislative body actually considered the evidence on which the government relied to justify its ordinance); R.V.S., 361 F.3d at 404, 411-13, 415-16 (holding that government had failed to present sufficient evidence during bench trial to meet its initial burden; remanding for entry of judgment after concluding ordinance, therefore, violated First Amendment); Peek-A-Boo Lounge, 337 F.3d at 1269 & n. 18 (reversing judgment entered for County and sustaining plaintiffs’ First Amendment challenge); Encore Videos, Inc. v. City of San Antonio, 330 F.3d 288, 295 (5th Cir.2003) (striking down ordinance after holding that City had failed to assert any evidence to justify its enactment). But, as I have indicated, the County in this case did not fail to meet its minimal initial burden. ,

. Interestingly, Dr. Linz's studies took place primarily in urban areas: Charlotte, North Carolina; Ft. Wayne, Indiana; San Diego, California; sixty-seven Florida counties; and Dayton, Ohio.

. The County enacted its first ordinance regulating sexually oriented businesses within a year of Abilene Retail's opening its store. As a result, Abilene Retail commenced this litigation. The County then amended its ordinance, and Abilene Retail amended its complaint to challenge the new ordinance. It is only this amended ordinance that is at issue now in this case. Throughout this litigation, the County has agreed to stay enforcing these challenged ordinances until the courts resolve their validity. So Abilene Retail has operated its adult retail store in an unrestricted manner for several years. Abilene Retail presented evidence tending to prove that during this time, its store has not produced any of the secondary effects that the County seeks to eliminate through its regulation of sexually oriented businesses.
Of course, the County "need not wait for sexually oriented businesses to locate within its boundaries, depress property values, increase crime, and spread sexually transmitted diseases before it regulates those businesses.” Z.J. Gifts, 136 F.3d at 688. But in this case, the County’s actual experience with Abilene Retail’s store offers some corroboration of Abilene Retail’s evidence suggesting that sexually oriented businesses do not produce the negative secondary effects that the County fears.

. Abilene Retail also challenges the County's rationale by pointing out that the County’s case law and pre-packaged reports primarily address adult establishments offering only on-site entertainment, or both on- and off-site entertainment, or concerned studies that did not differentiate between the secondary effects caused by on-site versus off-site adult entertainment. Abilene Retail argues that such evidence does not support the County’s rationale that it needs to regulate off-site adult businesses to the same extent it regulates on-site establishments. By this argument, Abilene Retail argues that, based upon the County's evidence, the County's ordinance is not narrowly tailored to serve the County's substantial interest in combating the secondary effects of sexually oriented businesses. See Doctor John’s, 465 F.3d at 1166. While we have concluded that this on-site/off-site distinction is not relevant at the initial stage of the Alameda Books' analysis, in Doctor John’s we acknowledged that "a distinction between on-site and off-site businesses might be relevant in the Alameda Books burden shifting framework.” Doctor John’s, 465 F.3d at 1168. Nonetheless, like the plaintiff in Doctor John’s, Abilene Retail failed to point to any evidence "that its type of adult business {e.g., 'off-site’) is relevantly different than those types of businesses analyzed in the studies supporting the ordinance {e.g., 'on-site').” Id. "Simply stating that off-site businesses are different from on-site businesses is not sufficient to shift the burden back to the [government].” Id.
It would be at this stage in the analysis that Abilene Retail might also present evidence indicating that sexually oriented businesses in rural settings "have materially different secondary effects” than the urban areas addressed in the County's case law and prepackaged reports. Id. But Abilene Retail has never itself drawn that distinction, let alone *1187 presented any evidence to support that distinction. See id. at 1168.

. I recognize the considerable overlap between this inquiry and the previous one.

. In enacting the challenged ordinance, the County specifically found the following, based upon the cases and reports it had before it:
(1) Sexually oriented businesses, as a category of commercial uses, are associated with a wide variety of adverse secondary effects including, but not limited to, personal and property crimes, prostitution, potential spread of disease, lewdness, public indecency, obscenity, illicit drug use and drug trafficking, negative impacts on property values, urban blight, litter, and sexual assault and exploitation.
(2) Sexual acts ... sometimes occur inside the premises of or in the parking lot of unregulated sexually oriented businesses, including but not limited to those which provide private ■ or semi-private booths, rooms, or cubicles for viewing films, videos, or live sexually explicit shows, which acts pose a risk to public health through the spread of sexually transmitted diseases.
(3) Sexually oriented businesses should be separated from sensitive land uses to minimize the impact of their secondary effects upon such uses, and should be separated from other sexually oriented businesses, to minimize the secondary effects associated with such uses and to prevent an unnecessary concentration of sexually oriented businesses in one area.
(4) Each of the foregoing negative secondary effects constitutes a harm which the County has a substantial government interest in preventing and/or abating, and said substantial interest exists independent of any comparative analysis between sexually oriented and non-sexually oriented businesses.