DURHAM VIDEO & NEWS, INC., D/B/A Movie Town, Petitioner v. DURHAM BOARD OF ADJUSTMENT, and CITY OF DURHAM, Respondents

No. COA00-609

(Filed 19 June 2001)

1. **Zoning— search for adult merchandise—administrative search warrant required**

An administrative search warrant was needed for zoning officials to search a store for adult merchandise. The enforcement of the zoning code is not frustrated by requiring a warrant for administrative searches, video and book sales are not pervasively regulated industries, and Durham's zoning ordinance does not set forth specific and regularly enforced guidelines for the search of video and book stores. Inspectors may do a cursory inspection of a store's contents, as a customer might, and obtain a warrant

DURHAM VIDEO & NEWS, INC. v. DURHAM BD. OF ADJUST.

[144 N.C. App. 236 (2001)]

based on their observations; the behavior of the zoning officials in this case clearly went beyond the bounds of a normal customer of the store and constituted a search as that term is understood under the Fourth Amendment.

**2. Search and Seizure— administrative search warrant—supporting affidavit**

An administrative search warrant was valid where the language in the affidavit was virtually identical to that approved in *South Blvd. Video & News v. Charlotte Zoning Bd. of Adjust.*, 129 N.C. App. 282.

**3. Zoning— issue not raised before board of adjustment—not before superior court**

Petitioner's argument that an administrative search warrant was invalid because the magistrate signed only four of five pages was not considered where petitioner did not bring up the issue in its motion to suppress the evidence from the search before the board of adjustment. The superior court sat as an appellate court and had no authority to address issues not argued before the board of adjustment.

**4. Zoning— report from planning staff—not timely received—no prejudice**

There was no prejudicial error in a zoning decision where a report from the planning staff was not mailed to petitioner the requisite ten days before the hearing. Everything in the report was a matter of public record, nothing in it could have taken petitioner by surprise, and petitioner showed no prejudice from its late receipt of the record.

**5. Zoning— adult establishment—sufficiency of evidence**

There was sufficient evidence in a zoning action to conclude that petitioner was operating an adult bookstore and adult mini motion picture theater where petitioner objected to determining whether a publication or motion picture was "adult" by looking only at the pictures and advertisements on the covers. The board of adjustment in this case was merely enforcing zoning requirements and made no determination that petitioner violated criminal obscenity laws; in the context of zoning enforcement, it is reasonable to rely upon the pictures and titles on the covers because the publishers make a distinct effort to impart to viewers the content of the material and because reading and viewing all of

the books, magazines, and videos in an adult establishment would render the zoning laws unenforceable.

**6. Zoning— adult establishment ordinance—non-adult materials**

The age and price of the stock were factors which a zoning board of adjustment could properly consider in determining the relative importance of the adult and non-adult materials when deciding whether petitioner was operating an adult business in violation of zoning restrictions.

**7. Zoning— adult establishment ordinance—sexual devices**

A zoning board of adjustment did not err when considering whether petitioner was operating an adult business in violation of zoning ordinances by making an incidental finding regarding the presence of sexually oriented devices on the property even though sexually oriented devices are not included as a consideration in N.C.G.S. § 14-202.10.

**8. Zoning— adult establishment ordinance—amendment of statute**

The superior court did not err in a zoning action by refusing to clarify which version of N.C.G.S. § 14-202.10 was used by the board of adjustment in deciding whether petitioner was operating an adult business because the amendment merely codified the Court of Appeals' explanations of the word "preponderance" and was not a substantive change in the law.

**9. Constitutional Law— adult establishment zoning ordinance—not vague or overbroad**

An adult establishment zoning ordinance was not unconstitutionally vague or overbroad, both facially and as applied.

Appeal by petitioner from judgment and order entered 1 September 1999, and from order entered 15 November 1999 by Judge Knox V. Jenkins, Jr., in Durham County Superior Court. Heard in the Court of Appeals 28 March 2001.

*Loflin & Loflin, by Thomas F. Loflin, III, for petitioner.*

*Karen A. Sindelar, Assistant City Attorney, City of Durham, for respondents.*

**DURHAM VIDEO & NEWS, INC. v. DURHAM BD. OF ADJUST.**

[144 N.C. App. 236 (2001)]

HUDSON, Judge.

Petitioner appeals from a judgment and order of the Durham County Superior Court affirming the Durham Board of Adjustment's decision that petitioner was operating an adult establishment in violation of the Durham zoning code. We affirm the determination of the Superior Court.

On 15 October 1998, a Durham zoning enforcement officer issued a Notice of Violation charging petitioner with operating an adult establishment in an improper zoning district in violation of Chapter 24, Section 6, of the Durham City/County Zoning Ordinance. Petitioner's store, Movie Town, is located in a "General Commercial" district in which adult establishments are not allowed.

On 16 October 1998, petitioner appealed the Notice to the Durham City/County Board of Adjustment (the Board) pursuant to N.C.G.S. § 160A-388(b). A quasi-judicial hearing was held on the matter on 9 December 1998. The Board voted to uphold the Notice of Violation, concluding that petitioner was operating both an adult bookstore and an adult mini-motion-picture theater. Petitioner then filed a petition for writ of certiorari with the Durham County Superior Court under N.C.G.S. § 160A-388(e), which court affirmed the Board's decision in a judgment and order filed 1 September 1999. Petitioner thereafter moved the court to amend its findings of fact or make additional findings, which motion was denied. Petitioner gave timely notice of appeal to this Court.

Petitioner first argues that the Superior Court erred in its ruling that the administrative search warrant used to collect all of the City's evidence in this case was lawfully issued, or, in the alternative, was not necessary. On 15 and 16 October 1998, Durham zoning officials Pratt Simmons and Landy Void visited Movie Town, identified themselves as zoning officials, and viewed the areas of the store and the merchandise. Based on what they observed during these brief visits, they sought and received an administrative search warrant on 19 November. On that date, Simmons, Void, and zoning enforcement officer Dennis Doty conducted a more thorough inspection, documenting with greater detail the kinds of merchandise sold and taking photographs and a video of the store.

At the hearing before the Board, petitioner moved to suppress the evidence gathered on 19 November based upon the invalidity of the search warrant. The Board denied petitioner's motion. The Superior

Court upheld the Board's decision, finding that the warrant was valid, and that even if it was not, a warrant was not constitutionally required "because all materials viewed by Mr. Simmons and associates were openly displayed, and commercially available and viewable by the public." *See* N.C.G.S. § 15-27.2(f) (evidence obtained by invalid warrant may be used when warrant is not constitutionally required under the circumstances of the case).

[1] We first address whether an administrative warrant was needed in this situation. The Fourth Amendment's prohibition against unreasonable searches does apply to administrative inspections of private commercial property. *See v. City of Seattle*, 387 U.S. 541, 18 L. Ed. 2d 943 (1967). Although the expectation of privacy the owner of commercial property enjoys is significantly less than that granted to a private home owner, the circumstances in which warrantless searches of commercial property will be allowed are limited. *Donovan v. Dewey*, 452 U.S. 594, 69 L. Ed. 2d 262 (1981). Considerations in determining the propriety of legislative schemes allowing warrantless searches include whether the industry involved is a "closely regulated" one such that business owners should be aware of the need for regular inspections (such as in gun and liquor sales), whether the law specifically sets out the frequency and scope of the inspections owners may expect, and whether a warrant requirement would significantly frustrate enforcement of the law. *Id.*

The above criteria are not present in the case before us. Video and book sales are not pervasively regulated industries, and Durham's zoning ordinance does not set forth specific and regularly enforced guidelines for the search of video and book stores. Furthermore, we do not believe enforcement of the zoning code is frustrated by the requirement of obtaining a warrant to conduct administrative searches. Inspectors may do a cursory inspection of a store's contents as may a customer and, based on their observations, obtain a warrant authorizing a more detailed search.

"A search occurs when 'an expectation of privacy that society is prepared to consider reasonable is infringed.' " *Maryland v. Macon*, 472 U.S. 463, 469, 86 L. Ed. 2d 370, 376 (1985) (citation omitted). In *Maryland*, a plain-clothes detective browsed for several minutes through an adult bookstore and then purchased two magazines from the clerk. The clerk was subsequently arrested for the distribution of obscene materials. The United States Supreme Court determined that "[t]he officer's action in entering the bookstore and examining the wares that were intentionally exposed to all who frequent the place

DURHAM VIDEO & NEWS, INC. v. DURHAM BD. OF ADJUST.

[144 N.C. App. 236 (2001)]

of business did not infringe a legitimate expectation of privacy and hence did not constitute a search within the meaning of the Fourth Amendment." *Id.* at 469, 86 L. Ed. 2d at 377.

In *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 329, 60 L. Ed. 2d 920, 930 (1979), however, the Supreme Court explained that "there is no basis for the notion that because a retail store invites the public to enter, it consents to wholesale searches and seizures that do not conform to Fourth Amendment guarantees." In *Lo-Ji Sales*, the Town Justice and ten other officials searched a bookstore for obscene materials for six hours. Two or three marked police cars were parked out front, and no customers remained in the store after becoming aware of the presence of the police. The store's film booths were adjusted so that the films could be viewed without inserting any coins. Police officers removed magazines from their plastic casings so that they could be read. The Court commented on these actions: "The Town Justice viewed the films, not as a customer, but without the payment a member of the public would be required to make. Similarly, in examining the books and in the manner of viewing the containers in which the films were packaged for sale, he was not seeing them as a customer would ordinarily see them." *Id.* While *Maryland* and *Lo-Ji Sales* are criminal cases, they are instructive regarding the expectation of privacy properly enjoyed by the owner of a video and book store.

In the present case, zoning enforcement officers Dennis Doty, Pratt Simmons, and Landy Void visited petitioner's store on 19 November, took pictures, and recorded a 40 minute video detailing what they saw, even though a sign posted in the store prohibited the use of any visual or sound recording equipment by customers. They took two video tapes off the shelf and played portions of them on a video player they had brought. They made measurements of the square footage of the store using a measurement wheel. Although their presence on the property was less intrusive than that of the officials in *Lo-Ji Sales*, we believe their behavior clearly went beyond the bounds of that of a normal customer of the store. They were conducting a search of the property as that term is understood under the Fourth Amendment and needed a warrant to conduct it.

[2] We therefore turn to the question of whether the administrative warrant authorizing the search in this case was valid. To make the warrant process meaningful, the underlying facts sufficient to establish administrative probable cause to search must be set out in the affidavit supporting an administrative warrant. *Gooden v. Brooks,*

*Comr. of Labor*, 39 N.C. App. 519, 525, 251 S.E.2d 698, 703, *appeal dismissed*, 298 N.C. 806, 261 S.E.2d 919 (1979); *see also* N.C.G.S. § 15-27.2(c). In the present case, zoning enforcement officer Pratt Simmons set forth in an affidavit that he had visited petitioner's store on 15 and 16 October 1998:

> During both inspections, I observed that the preponderance of the publications, including videotapes, offered for sale or rent in the business appeared to be distinguished or characterized by their emphasis on matter depicting, describing or relating to sexual activities and human genitals, pubic regions, buttocks and female breasts. In addition, merchandise such as artificial genitals and other sexual paraphernalia was displayed. To the rear of the business establishment were approximately 22 booths and it appeared that the preponderance of videos viewed in such booths were distinguished or characterized by their emphasis on matter depicting, describing or relating to sexual activities, human genitals, pubic regions, buttocks and female breasts.

Petitioner contends Simmons' statements were merely "conclusory" and inadequate to support a warrant. However, the language in Simmons' affidavit is virtually identical to that approved as sufficient to establish probable cause to conduct an administrative search by this Court in *South Blvd. Video & News v. Charlotte Zoning Bd. of Adjust.*, 129 N.C. App. 282, 291-92, 498 S.E.2d 623, 629, *appeal dismissed and disc. review denied*, 348 N.C. 501, 510 S.E.2d 656 (1998). Petitioner's argument must therefore fail.

**[3]** Petitioner also stresses that the warrant was invalid because the magistrate who issued it signed only four out of five pages constituting the warrant. However, petitioner did not bring up the issue of the lack of a proper signature on the warrant in its motion to suppress the evidence from the search before the Board. The Superior Court sat as an appellate court in this case, and thus had no authority to address issues not previously argued before the Board. *See Sherrill v. Town of Wrightsville Beach*, 76 N.C. App. 646, 649, 334 S.E.2d 103, 105 (1985). For the same reason, we decline to address petitioner's argument on this point as well. *See* N.C. R. App. P. 10(b)(1)

**[4]** Petitioner next contends the Superior Court erred in determining the Board did not violate its own rules which required that the planning department's staff report on petitioner's case be mailed to petitioner 10 days prior to hearing. Petitioner did not receive a complete copy of the staff report until after business hours on 7 December

DURHAM VIDEO & NEWS, INC. v. DURHAM BD. OF ADJUST.

[144 N.C. App. 236 (2001)]

1998, 2 days before the hearing. Based on this fact, counsel requested that the hearing be continued until 18 December. This request, which was made at the hearing after petitioner's motion to suppress had been argued at length, was denied.

Having thoroughly reviewed the record on this issue, we determine petitioner was in no way prejudiced in its preparation for the hearing by its late receipt of the staff report. The staff report contained copies of the original Notice of Violation, petitioner's appeal, the petitioner's building permit and floor plan submitted with that permit, petitioner's sign permit, the definition of adult establishment from Durham's ordinance and the North Carolina statutes, and a summary of the Court of Appeals' holding in *South Blvd. Video & News v. Charlotte Zoning Bd. of Adjust.*, cited above. Everything contained in the staff report was already a matter of public record, and nothing in it could have taken petitioner by surprise.

Counsel for petitioner did argue to the Board that there were certain inaccurate notations on the map of the store included in the staff report, and that if he had received the map earlier, he could have subpoenaed someone to refute them. However, counsel was cryptic regarding which information on the map was misleading, and we see no reason why the manager of Movie Town, who did testify at the hearing, could not have pointed out any inaccuracies in the map. Petitioner has shown no prejudice whatsoever in its late receipt of the staff report; we do not believe it is necessary to remand for a new hearing on this basis.

[5] Petitioner next contends that there was insufficient evidence to support the Board's conclusion that petitioner was operating an adult bookstore and adult mini-motion-picture theater, and that the Board's decision to this effect was arbitrary and capricious. The Superior Court had a duty to insure that the decision of the Board was "supported by competent, material and substantial evidence in the whole record," and that its decision was not arbitrary and capricious. *Fantasy World, Inc. v. Greensboro Bd. of Adjustment*, 128 N.C. App. 703, 706-07, 496 S.E.2d 825, 827, *appeal dismissed and disc. review denied*, 348 N.C. 496, 510 S.E.2d 382 (1998). This Court must conduct a similar review. *Id.* at 707, 496 S.E.2d at 827.

After a thorough consideration of the record before the Board, we determine that its findings of fact and conclusions of law to the effect that petitioner was operating an adult bookstore and adult mini-motion-picture theater, as those businesses are defined in N.C.G.S.

§ 14-202.10(1) & (6), are supported by competent, material, and substantial evidence in the whole record. We will, however, address a number of specific concerns set forth by petitioner.

Petitioner strenuously objects to the Board's finding of fact that: "Whether a group of publications, including both written publications and videos, emphasize specified sexual activities or specified anatomical areas as defined by statute can be reasonably determined by looking at the titles and pictures on the covers of such publications." Petitioner insists that whether a certain publication or motion picture is "adult" may be determined only by reading or viewing the entire publication or movie. This assertion is based on the United States Supreme Court's holding that in judging whether material may be considered "obscene," the trier of fact must determine, in part, "whether the work, *taken as a whole,* lacks serious literary, artistic, political, or scientific value." *Miller v. California,* 413 U.S. 15, 24, 37 L. Ed. 2d 419, 431 (1973) (emphasis added); *see also State v. Watson,* 88 N.C. App. 624, 364 S.E.2d 683, *appeal dismissed and disc. review denied,* 322 N.C. 485, 370 S.E.2d 235 (1988) (discussing similar requirements under North Carolina's obscenity statute, found at N.C.G.S. § 14-190.1).

*Miller,* however, deals with the enforcement of criminal obscenity statutes. In the case before us, there was no determination that Movie Town was violating criminal obscenity laws by selling or renting particular magazines or videos. The Board was merely enforcing zoning requirements relating to adult establishments. There was no requirement that the Board consider, for example, the artistic value of Movie Town's merchandise. The Board was instead called upon to determine whether the books, magazines, and videos sold and the motion pictures presented by Movie Town were "distinguished or characterized by their emphasis on matter depicting, describing, or relating to specified sexual activities or specified anatomical areas." *See* G.S. § 14-202.10(1) & (6). We agree that such a determination may reasonably be made in the context of zoning enforcement by examination of the covers and titles of written publications and videos.

Petitioner would argue that even if a magazine cover contains pictures of entirely nude women, and thus displays "specified anatomical areas," *see* G.S. 14-202.10(10), zoning enforcement officers should have to read the entire magazine to determine that the content of the magazine "as a whole" is indeed more of the same. Such a standard would make zoning laws regarding adult establishments unenforce-

able. Movie Town houses thousands of books, magazines, and videos; it would take months to read and view in its entirety all of the material the store sells.

Furthermore, we believe the publishers of adult videos and magazines make a distinct effort to impart to persons viewing their titles and covers that the content of the material is characterized by an emphasis on pictures of unclothed breasts, buttocks, or genitalia and/or displays of sexual acts. The magazine covers filmed by the zoning enforcement officers in this case showed titles such as *Bump & Grind, Wicked Fetishes, Panty Girls,* and *Open Legs & Lace,* and all displayed women and men in various states of undress in sexually inviting poses. The video boxes filmed by the officers exhibited photographs of people having sexual intercourse, with advertisements such as "Real People Having Real Sex!" and "Explicit Anal Sex." In conclusion, in the context of zoning enforcement, we believe it is reasonable to rely upon an analysis of the pictures and titles on the covers of magazines, videos, and other publications to decide whether such works emphasize the anatomical parts and sexual activities specified in G.S. § 14-202.10(10) & (11).

[6] Petitioner also objects to the Board's findings that the non-adult material carried by Movie Town was of less weight and importance compared to the adult material in part because the non-adult stock was generally older and less expensively priced. We believe age and price of the stock were factors the Board could properly consider in determining the relative importance of the adult and non-adult materials to Movie Town's business.

[7] Finally, petitioner objects to the Board's finding that the store "contains a display area for sexually oriented devices, including but not limited to vibrators and dildos, which helps give an adult context to the display of the adult publications in the area." Petitioner correctly asserts that the sale of sexually oriented devices is not included in G.S. § 14-202.10 as a consideration for determining whether an establishment is "adult." However, we do not believe it was reversible error for the Board to make an incidental finding regarding the presence of sexually oriented devices on the property.

[8] Petitioner next argues the Superior Court improperly refused petitioner's request to amend its judgment to reflect the judge's understanding of which version of G.S. § 14-202.10 the Board used in deciding the case. Durham's zoning ordinance explicitly adopts the

definitions of adult establishment, adult bookstore, and adult mini-motion-picture theater set forth in G.S. § 14-202.10 as its own. In 1998, after Durham adopted the definitions as set forth in G.S. § 14-202.10, the definition of "adult bookstore" in G.S. § 14-202.10(1) was amended to define an adult bookstore as one:

> Having as a preponderance *(either in terms of the weight and importance of the material or in terms of greater volume of materials)* of its publications . . . which are distinguished or characterized by their emphasis on matter depicting, describing, or relating to specified sexual activities or specified anatomical areas, as defined in this section.

(language added by amendment in italics). Petitioner claims the definition of "preponderance" was thus substantively changed by the amendment to the state statute. Petitioner contends the definition of "adult bookstore" in Durham's ordinance did not similarly change, given that the amendment to G.S. § 14-202.10 was not ever expressly adopted by the City Council. Therefore, if the Board applied the amended version of G.S. § 14-202.10 to petitioner, the Board committed an error of law.

The Board's decision concludes that Movie Town "meets the statutory definition of an adult bookstore whether the pre-1998 definition as clarified through case law is used or the definition as amended in 1998 is used." The Superior Court, in reviewing the Board's decision, found that "the Board's application of the term 'preponderance' as it exists in City ordinance through incorporation of state statute into such ordinance was consistent with that state statute, as interpreted by case law."

Petitioner made a motion to amend the judgment pursuant to N.C. R. Civ. P. 52(b), requesting that the Superior Court clarify its understanding of whether the Board used the pre- or post-amendment definition of G.S. § 14-202.10 in making its decision. This motion was denied, and petitioner contends to this Court that the Superior Court erred in failing to explain its decision.

Petitioner's argument is without merit. *Fantasy World*, 128 N.C. App. at 710, 496 S.E.2d at 829, filed on 3 March 1998, interpreted the word "preponderance" in G.S. § 14-202.10(6) to mean "superiority in weight." *South Blvd. Video*, 129 N.C. App. at 288, 498 S.E.2d at 627, filed 21 April 1998, also recognized that the term "preponderance" as

DURHAM VIDEO & NEWS, INC. v. DURHAM BD. OF ADJUST.

[144 N.C. App. 236 (2001)]

used in G.S. § 14-202.10(1) & (6) denotes a superiority in weight "which is a qualitative measurement." Thus, the General Assembly's amendment of G.S. § 14-202.10, effective 15 July 1998, merely codified the Court of Appeals' explanations of what the word "preponderance" had meant in the statute since its adoption. As such, the amendment was not a substantive change in the law. Therefore, it is irrelevant whether the Board interpreted Durham's ordinance as incorporating G.S. § 14-202.10 either before or after the statute's amendment. The Superior Court did not err in refusing to clarify which version of the statute it believed the Board used in making its decision.

[9] Petitioner furthermore argues that the Superior Court erred in concluding that Durham's adult establishment ordinance is not unconstitutionally vague or overbroad, both facially and as applied to this case. Petitioner concedes that this Court addressed and confirmed the facial validity of the term "preponderance" used in G.S. § 14-202.10 in *Fantasy World*, 128 N.C. App. at 708, 496 S.E.2d at 828, and *South Blvd. Video*, 129 N.C. App. at 287, 498 S.E.2d at 627. Petitioner does not point out any other portion of the statute it contends is vague or overbroad. It merely repeats its argument that the Board applied the ordinance in an arbitrary manner when it judged whether Movie Town was an adult establishment by viewing the covers of books and videos displayed in the store. This argument has been addressed above and found to be without merit.

Petitioner's final assertion is that the Superior Court erred in affirming the Board's decision in its entirety. As petitioner's previous arguments, set forth in support of this assignment of error, have failed, this assignment of error fails as well.

In conclusion, the Superior Court properly upheld the decision of the Board that petitioner was operating an adult establishment in violation of Durham's zoning ordinance.

Affirmed.

Judges WYNN and TIMMONS-GOODSON concur.