In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 05-2225, 05-2287 & 05-2288

ANDY'S RESTAURANT & LOUNGE, INC.,
and RUSBEN CORP. d/b/a/ TRUCKER'S
WORLD BOOK & VIDEO STORE,

*Plaintiffs-Appellants,*

PANDORA'S SHOWCLUB, K.K.S., INC. d/b/a
VARIETY VIDEO, J.A. SALES, INC. d/b/a
VIDEO HEAVEN, TERRENCE L. CROSSLEY
d/b/a/ JOKERS CLUB, PLAYERS CLUB,
AND CORVETTE CLUB,

*Plaintiffs-Intervenors/Appellants,*

*v.*

CITY OF GARY,

*Defendant-Appellee.*

Appeals from the United States District Court
for the Northern District of Indiana, Hammond Division.
Nos. 01 C 327, 01 C 397 and 01 C 525—
**Andrew P. Rodovich**, *Magistrate Judge.*

ARGUED FEBRUARY 21, 2006—DECIDED OCTOBER 11, 2006

Before BAUER, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* This appeal concerns the con-
stitutionality of an ordinance enacted by the City of Gary
("City") affecting "sexually oriented businesses." In a

thorough and well reasoned opinion, Magistrate Judge Rodovich granted summary judgment for the City on the declaratory judgment action filed by some of the businesses affected by the ordinance. We affirm.

## I. HISTORY

The City adopted the challenged Ordinance No. 2000-83 ("the Ordinance") on December 19, 2000. Its preamble states the City's concern that "sexually oriented businesses," among other things, "have a deleterious effect on both the existing businesses around them and the surrounding residential areas adjacent to them." By enacting the Ordinance, the City "desire[d] to minimize and control these adverse effects and thereby protect the health, safety, and welfare of the citizenry . . . and deter the spread of urban blight." The intent of the Ordinance, the preamble states, is "to enact a content neutral ordinance which address the secondary effects of sexually oriented business" while not "suppress[ing] any speech activities protected by the First Amendment of the U.S. Constitution." In support of its findings, the Ordinance cites a number of federal cases dealing with similar laws affecting sexually oriented businesses and eighteen reports detailing the secondary effects of these businesses.

The Ordinance defines "sexually oriented business" broadly, including a number of businesses separately defined by the Ordinance, which, generally speaking, means all manner of adult bookstores, arcades, novelty stores, theaters, and dancing establishments. It includes operating hours of 10:00 a.m. to 11:00 p.m., seven days a week, and a prohibition on any physical contact between employees appearing in a semi-nude condition (i.e., dancers) and customers. It also has an open-booth requirement, which prohibits the placement of doors, curtains or other materials on viewing booths so that an employee of the business

is able to look into it at all times. The Ordinance also contains numerous sanitation provisions, including a prohibition on rugs or carpet, a requirement of "non-porous, easily cleanable surfaces," and waste disposal procedures, as well as other obligations for employees, such as ensuring that no sexual activity occurs on the premises.

All sexually oriented businesses covered by the Ordinance are required to obtain a license. Once an application is filed, "the City Comptroller shall immediately issue a Temporary License to the applicant," which only "expire[s] upon the final decision of the City to deny or grant the license." The Ordinance requires that a permanent license be issued, unless (1) the applicant is below the age of 18, (2) the applicant fails to provide, or provides false information on the application, (3) the fee is not paid, (4) the applicant has committed certain violations of the Ordinance within the last year, or (5) the physical premises of the business do not comply with the Ordinance's requirements. A license can be suspended on the basis of a knowing violation of the Ordinance, and revoked if a knowing violation occurs within twelve months of a suspension.

Denial, suspension, or revocation of a license only occurs after a hearing at which the aggrieved party has the opportunity to be heard. If any adverse action is taken, the party must be notified of the right to appeal to a court of competent jurisdiction. During the pendency of any such appeal, the City must issue the aggrieved party a provisional license, which allows the business to stay open until final judgment is rendered by a court.

## II. ANALYSIS

We review the district court's summary judgment ruling de novo, viewing all material disputes of fact in the light most favorable to the plaintiff. *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 900 (7th Cir. 2005). The plaintiffs' arguments

on appeal rely upon the First Amendment, Fourth Amendment, and Indiana law.

### A. First Amendment

The plaintiffs' argument can be organized as follows: the Ordinance discriminates on the basis of content, and, therefore, should be analyzed under strict scrutiny; even when analyzed under lesser, intermediate scrutiny, the City has not met its burden of justifying the Ordinance; and that the Ordinance acts as an impermissible prior restraint on speech.

To assess whether the Ordinance violates the First Amendment, both parties echo the district court's analysis by relying on the analytical framework set forth by *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002), and *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47-50 (1986). The *Alameda Books/Renton* line of cases deal with zoning ordinances aimed at dispersing adult entertainment businesses throughout a community, which are considered time, place, and manner restrictions. *Alameda Books*, 535 U.S. at 434 (plurality opinion). Another line of Supreme Court cases, however, uses the intermediate scrutiny test of *United States v. O'Brien*, 391 U.S. 367 (1968), to review public indecency statutes, which are considered laws affecting expressive conduct. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (plurality opinion); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565-66 (1991) (plurality opinion).

There is some confusion about which line of cases should be used in evaluating laws like the Ordinance, which do not fall neatly into either category. *See Ben's Bar, Inc. v. Village of Somerset*, 316 F.3d 702, 714 (7th Cir. 2003) (expressing uncertainty as whether to analyze an adult entertainment liquor regulation "as a time, place, and manner restriction

[under *Alameda Books/Renton*] or as a regulation of expressive conduct under [*Pap's A.M./Barnes*]") (citing *LLEH, Inc. v. Wichita County, Texas*, 289 F.3d 358, 365 (5th Cir. 2002)). And for most cases, it may not matter which test is employed. *Id.* (noting that the analysis between the two lines of cases may be "entirely interchangeable"). The crucial analytical step of both tests is the same; which is to say, that under both lines of cases, intermediate scrutiny is applied if the challenged law is found to be either content neutral or for the purpose of decreasing secondary effects. *See Alameda Books*, 535 U.S. at 448 (Kennedy, J. concurring) ("A zoning restriction that is designed to decrease secondary effects and not speech should be subject to intermediate rather than strict scrutiny."); *R.V.S., L.L.C. v. City of Rockford*, 361 F.3d 402, 408 (7th Cir. 2004) ("[O]nly after confirming that a zoning ordinance's purpose is to combat the secondary effects of speech do we employ *Renton's* intermediate scrutiny test."). *Cf. Pap's A.M.* 529 U.S. at 289 (plurality opinion) ("We now clarify that government restrictions on public nudity such as the ordinance at issue here should be evaluated under the framework set forth in *O'Brien* for content-neutral restrictions on symbolic speech.").

We need not choose between either line of cases (nor need we rule that the differences between them are immaterial) because both parties proceed under the general framework of *Alameda Books/Renton*, which we will employ, while referring to other case law as appropriate, as the parties do.[1] Moreover, all of the issues raised by plaintiffs are

---

[1] Without any elaboration, the plaintiffs do state in the middle of their brief, "Moreover, the District Court has completely ignored the fact that [the Ordinance] is not a 'land use' regulation, as was the regulation in *Renton*." We do not, and cannot, read this mere sentence as an argument that it is improper to apply, as the district court did, the *Alameda Books/Renton* line of cases to the

(continued...)

clearly controlled by the Court's precedents or ours, and, therefore, our resolution of the issues would be same under either line of cases.

## 1. *Secondary Effects/Content Neutrality*

The plaintiffs argue that the Ordinance does not regulate the secondary effects of speech, but, rather, directly regulates speech.[2] This determination is crucial, because if the Ordinance only combats secondary effects of otherwise protected speech, then it is considered the equivalent of content neutral, and, therefore, need only survive intermediate scrutiny. *See Alameda Books*, 535 U.S. at 448 (Kennedy, J. concurring); *R.V.S.*, 361 F.3d at 408. *Cf. Pap's A.M.* 529 U.S. at 289 (plurality opinion) (explaining that restrictions on public nudity are content neutral and should be analyzed under *O'Brien* intermediate scrutiny).

Our inquiry in this regard "is best conceived as [one] into the purpose behind an ordinance." *R.V.S.*, 361 F.3d at 407-08 (citations omitted). Our task is "to verify that the 'predominant concerns' motivating the ordinance 'were with the secondary effects of the adult [speech], and not with the content of adult [speech].'" *Alameda Books*, 535 U.S. at 440-41 (plurality opinion) (quoting *Renton*, 475 U.S. at 47). "Federal courts evaluating the 'predominant concerns'

---

[1] (...continued)
Ordinance. *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n.1 (7th Cir. 2004) ("We have repeatedly made clear that perfunctory and undeveloped arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues).") (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)).

[2] The plaintiffs concede that the Ordinance passes the first step of the *Alameda Books/Renton* analysis in that it does not ban all speech. *See Alameda Books*, 535 U.S. at 434-35.

behind the enactment of a[n] . . . ordinance . . . may do so by examining a wide variety of materials including, but not limited to, the text of the . . . ordinance . . ., any preamble or express legislative findings associated with it, and studies and information of which legislators were clearly aware." *R.V.S.*, 361 F.3d 409 n.5 (citing *Ben's Bar*, 316 F.3d 702, 723 n.28).

A review of those materials makes clear that the Ordinance is directed toward secondary effects. The Ordinance emphasizes that its purpose is to control the "adverse effects" of sexually oriented businesses and the reports before the council primarily addressed secondary effects. Plaintiffs provide nothing of relevance in response. One argument they do make is that the Ordinance contains a shocking admission that it is not concerned with secondary effects—the City's belief that sexually oriented businesses, *because of their very nature*, downgrade the quality of life. There is no such admission in the Ordinance; plaintiffs merely infer that this must be the City's thought process. More importantly, plaintiffs fail to grasp that the concept of "secondary effects," as developed in *Renton* and *Alameda Books,* assumes that the properly regulated externalities are caused by protected speech. *See Alameda Books,* 535 U.S. at 445-48 (Kennedy, J. concurring) (explaining that an ordinance is content neutral and addresses secondary effects "even if [it] identifies the [secondary effects] by reference to the speech . . . that is, even if the measure is in that sense content based").

Plaintiffs also posit that a city council cannot rely on reports and studies when creating an ordinance because such things are hearsay, or, it might be that the argument is a city council can rely on these documents in creating an ordinance, but cannot later use the fact of its reliance on such reports in warding off a constitutional challenge in court because such reports are hearsay. Plaintiffs finish this argument by telling us we cannot look to the

preamble of the ordinance because it is hearsay. Nevertheless, we feel comfortable relying on the findings and preamble of the statute and the reports cited therein to determine that the Ordinance is content neutral. *See, e.g.*, *Pap's A.M.*, 529 U.S. at 296-97 (plurality opinion) (explaining that the city could "reasonably rely on the evidentiary foundation set forth in *Renton*," as well as examining the findings and preamble of the city's ordinance to determine content neutrality); *Ben's Bar*, 316 F.3d at 723-24 (examining the preamble and findings of the challenged statute to determine whether the challenged statute should be analyzed under intermediate scrutiny).

### 2. Intermediate Scrutiny

Laws pass this lower level of scrutiny "so long as they are designed to serve a substantial government[al] interest and do not unreasonably limit alternative avenues of communication." *R.V.S.*, 361 F.3d at 408 (quoting *Renton*, 475 U.S. at 47, citing *Alameda Books*, 535 U.S. at 434); *see also Pap's A.M.*, 529 U.S. at 296, 301-02 (plurality opinion) (explaining that under *O'Brien,* a content-neutral restriction must "further[] an important or substantial government interest" and be "no greater than is essential to the furtherance of the government interest").

Laws are designed to serve a substantial government interest when the "municipality can demonstrate a connection between the speech regulated by the ordinance and the secondary effects that motivated the adoption of the ordinance." *R.V.S.*, 361 F.3d at 408 (quoting *Ben's Bar*, 316 F.3d at 724). "In evaluating the sufficiency of this connection, courts must 'examine evidence concerning regulated speech and secondary effects.'" *Id.* (quoting *Alameda Books*, 535 U.S. at 441). "The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated

by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *Renton*, 475 U.S. at 51-52; *see also Alameda Books*, 535 U.S. at 451 (Kennedy, J. concurring) ("[W]e have consistently held that a city must have latitude to experiment, at least at the outset, and that very little evidence is required."). A city may rely upon previous judicial opinions evaluating secondary effects the city desires to regulate. *Pap's A.M.* 529 U.S. at 297 (plurality opinion) (explaining that the city could "reasonably rely on the evidentiary foundation set forth in *Renton* and *American Mini Theatres* to the effect that secondary effects are caused by the presence of even one adult entertainment establishment in a given neighborhood").

The evidence relied upon by the City is more than adequate to establish the secondary effects regulated by the Ordinance. The record contains numerous studies evidencing the secondary effects of sexually oriented businesses. Moreover, we have previously affirmed the only two portions of the Ordinance plaintiffs specifically attack—the hour regulation and open-booth requirement. In *Schultz v. City of Cumberland*, an hour regulation similar to that imposed by the Ordinance was upheld by this court against a First Amendment challenge. 228 F.3d 831, 846 (7th Cir. 2000) (upholding a portion of an ordinance "limiting the business hours for sexually oriented businesses to between 10 a.m. and midnight, Monday through Saturday."). And we have also upheld open-booth requirements similar to the one in the Ordinance. *See Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988, 1003-04 (7th Cir. 2002) (explaining that the open-booth requirement was a valid time, place, and manner restriction); *Matney v. County of Kenosha*, 86 F.3d 692 (7th Cir. 1996) (same).

To counter these decisions the plaintiffs simply nitpick at the relevance and reliability of the City's studies, claiming that they are either too old or inapplicable because they

discuss problems in other cities and not Gary. All of these arguments are without merit. *Renton*, 475 U.S. at 51-52; *G.M. Enterprises, Inc. v. Town of St. Joseph*, 350 F.3d 631, 639-40 (7th Cir. 2003); *Ben's Bar*, 316 F.3d at 725.

Faced with our precedent and the City's substantial evidentiary record, the plaintiffs present nothing of relevance. "Instead, [they] have simply asserted that the council's evidentiary proof is lacking. In the absence of any reason to doubt it, the city's expert judgment should be credited." *Pap's A.M.*, 529 U.S. at 298 (plurality opinion); *see also Alameda Books*, 535 U.S. at 438-39 (plurality opinion) ("If plaintiffs fail to cast direct doubt on [the city's] rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings, the municipality meets the standard set forth in *Renton*.").

We also reject plaintiffs' argument that the Ordinance is not sufficiently narrow. *See Alameda Books*, 535 U.S. at 434 (plurality opinion) (explaining that a content neutral ordinance designed to serve a substantial government interest must still leave "reasonable alternative avenues of communication."); *Pap's A.M.*, 529 U.S. at 301-02 (plurality opinion) (noting that the fourth factor of the *O'Brien* test is "that the restriction is no greater than is essential to the furtherance of the government interest"). We have previously held that similar hour restrictions and open-booth requirements are narrowly tailored, and we stick to those rulings here. *Pleasureland Museum, Inc.*, 288 F.3d at 1004 ("[W]e have repeatedly held that regulations like the Open Booth Restrictions leave open ample alternative channels of communication.") (citations omitted); *Schultz*, 228 F.3d at 846 (explaining that an hour restriction similar to that of this case was "not 'substantially broader than necessary,' even if more restrictive than absolutely necessary") (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 800 (1989)).

### 3. *Prior Restraint/Prompt Judicial Review*

Plaintiffs argue that the Ordinance is invalid because it does not demand prompt judicial review of a decision to deny, suspend, or revoke a license. Plaintiffs also concede that this argument is foreclosed by our decision in *Graff v. City of Chicago*, but nevertheless ask us to reconsider. 9 F.3d 1309 (7th Cir. 1993) (en banc) (holding that common law review of a licensing decision was sufficient). We see no reason to reconsider *Graff* on this record, especially where the Ordinance requires continuous operation under a provisional license until the culmination of judicial review. *See also City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774, 781-84 (2004) (explaining that ordinary judicial review of a licensing decision was sufficient where the ordinance was content neutral and only conditioned operation on neutral, nondiscriminatory criteria).

### B. *Fourth Amendment and Indiana Law*

Plaintiffs argue that the Ordinance allows for searches in violation of the Fourth Amendment and that the Ordinance is preempted by Indiana Law. Both of these arguments are waived because the plaintiff failed to raise them before the district court. *See Estremera v. United States*, 442 F.3d 580, 587 (7th Cir. 2006) ("arguments not raised in the district court are waived on appeal") (quoting *Belom v. National Futures Ass'n*, 284 F.3d 795, 799 (7th Cir. 2002)). When moving for summary judgment, the City defended an inspection provision in the Ordinance against a possible Fourth Amendment challenge by arguing first, that sexually oriented businesses have no reasonable expectation of privacy in the public areas of their premises during business hours; and, second, that if plaintiffs were able to establish a privacy interest implicating the Fourth Amendment that the businesses were "closely-regulated indus-

tries" for which no warrant is necessary.[3] *See New York v. Burger*, 482 U.S. 691, 702-03 (1987) (applying the "closely-regulated industry" exception to the Fourth Amendment). In response, the plaintiffs simply assumed that the inspection provision implicated the Fourth Amendment, and only argued that sexually oriented businesses are not closely-regulated industries— despite the fact that the Ordinance only allows inspections in areas open to the public during business hours.

As the district court explained, plaintiffs "simply ignore[d] the law's clear mandate" that the inspection provision did not implicate a privacy interest. Finding persuasive the City's unrebutted argument on this point, the district court did not address the plaintiffs' argument that adult businesses were not "closely-regulated industries." Plaintiffs' failure to argue the existence of a privacy interest implicated by the Ordinance below waives the issue on appeal. In any event any concerns about privacy violations are abated by the language of the statute that limits inspection to assuring compliance with the specific requirements of the Ordinance—that is the open booth requirement, the hours of operation restrictions, the prohibition of physical contact, and other requirements as specifically listed in the Ordi-

---

[3]  The inspection provision states:

(A) Sexually oriented business operators and sexually oriented business employees shall permit officers or agents of the City of Gary who are performing functions connected with the enforcement of this Chapter to inspect the portions of the sexually oriented business premises where patrons are permitted, for the purpose of ensuring compliance with this Chapter, at any time the sexually oriented business is occupied by patrons or open for business.

(B) The provisions of this Section do not apply to areas of an adult motel which are currently being rented by a customer for use as a permanent or temporary habitation.

nance. Ordinance at § 7(A). In other words, as counsel assured the panel at oral argument, officers or agents of the City cannot enter non-public areas of the premises, cannot enter when the business is closed to the public, cannot remove anything from the premises, cannot take pictures or videos, cannot ask patrons to disclose their names, or do anything other than check for compliance with the requirements of the Ordinance. (Oral argument at 25-30 min). Accordingly, we will not disturb the district court's ruling that the Ordinance does not violate the Fourth Amendment.

Plaintiffs also attempt to raise a preemption argument relying on Indiana law. Before the plaintiffs filed their brief in the district court, the Indiana Attorney General asked for permission, which was granted, to file an amicus brief with the district court addressing the issue "that state alcoholic beverage statutes preempt local regulation of adult entertainment establishments." *See* Ind. Code § 7.1-3-9-6 (prohibiting certain local interference with liquor licenses provided by the state).

The plaintiffs then filed their brief opposing summary judgment without raising this issue. The very next day the Indiana Attorney General informed the district court that no amicus brief would be filed because no state law issues had been raised by the briefing.

Plaintiffs now attempt to argue that the Ordinance is preempted by Indiana law. But their earlier approach in the district court has deprived us of an analysis by the magistrate judge (and the views of the Indiana Attorney General), and, therefore, plaintiffs have waived the issue. *See Estremera*, 442 F.3d at 587.

### III.  CONCLUSION

Accordingly, the grant of summary judgment in favor of the City of Gary is AFFIRMED.

A true Copy:

       Teste:

                     _____
                     *Clerk of the United States Court of*
                     *Appeals for the Seventh Circuit*