**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ABILENE RETAIL #30, INC.,

    Plaintiff–Appellant,

v.

BOARD OF COMMISSIONERS OF
DICKINSON COUNTY, KANSAS;
KEITH HOFFMAN,

    Defendants–Appellees.

No. 05-3473
(D.C. No. 04-CV-2330-JWL)
(D. Kan.)

**ORDER**

Filed October 25, 2007

Before **TACHA,** Chief Judge, **KELLY, HENRY, BRISCOE, LUCERO, MURPHY, HARTZ, O'BRIEN, MCCONNELL, TYMKOVICH, GORSUCH,** and **HOLMES,** Circuit Judges.

The appellees' petition for rehearing is denied by the panel that rendered the decision in this case.

The suggestion for rehearing en banc was transmitted to all judges of the court who are in regular active service. A poll was requested and a majority of the active judges voted to deny rehearing en banc. Chief Judge Tacha and Judges Kelly, O'Brien, Tymkovich and Gorsuch voted to grant rehearing. Judge Gorsuch filed a dissent from the denial of rehearing en banc, and he was joined in this

dissent by Judge Kelly.  Judge Lucero filed a response to the dissent.  The dissent and response are attached and incorporated in this order.


ENTERED FOR THE COURT

ELISABETH A. SHUMAKER, Clerk

05-3473, *Abilene Retail #30, Inc. v. Bd. of Comm'rs of Dickinson County, Kan.*

**GORSUCH**, J., joined by **KELLY**, J., dissenting from denial of rehearing *en banc*.

While the panel grappled admirably with this difficult and consequential case, I respectfully submit it warranted plenary review given its legal and practical significance.

Legally, the significance of this case is illustrated by the fact that it opens not one, but two, splits with our sister circuits on important questions of law concerning the amount of judicial deference due legislative judgments. First, the panel opinion sets a new and much higher burden for municipalities under *Alameda Books* Step 1 than has any other circuit court, and in the process creates a circuit split with the Fifth Circuit. *See* Concurrence Part I; Maj. Op., 492 F.3d at 1175 n.10 (discussing *LLEH, Inc. v. Wichita County*, 289 F.3d 358 (5th Cir. 2002)).[1] Second, unlike our sister circuits which afford substantially more judicial deference to legislative judgments, the concurrence's treatment of *Alameda Books* Steps 2 and 3 effectively allows a jury to "veto" legislation

---

[1] There is no question that *LLEH* remains good law in the Fifth Circuit after *Alameda Books*. *See Fantasy Ranch Inc. v. City of Arlington, Tex.*, 459 F.3d 546, 562 (5th Cir. 2006). If anything, in *Fantasy Ranch* the Fifth Circuit went further than it had in *LLEH* in upholding a municipality's purely predictive judgment about potential future secondary effects at Step 1; in *Fantasy Ranch*, the municipality had *no* pre-enactment empirical evidence supporting the existence of secondary effects and a post-enactment records search revealed *no* arrests involving the city's targeted secondary effects. *Id.* at 559-61.

whenever it concludes, by a preponderance of the evidence (that is, $\geq 50.0001\%$), that the legislature's chosen path is erroneous.  *Compare* Concurrence Parts II & III *with Daytona Grand, Inc. v. City of Daytona Beach, Fla.*, 490 F.3d 860, 881 (11th Cir. 2007), *G.M. Enters., Inc. v. Town of St. Joseph, Wisc.*, 350 F.3d 631, 639 (7th Cir. 2003), *Gammoh v. City of La Habra*, 395 F.3d 1114, 1126 (9th Cir. 2005), *and Fantasy Ranch*, 459 F.3d at 561.[2]  Such a holding also arguably renders *Alameda Books* Step 1 superfluous (why bother asking if the legislature's evidence was merely rationally related to its enactment when a jury can reject that enactment with a finding that a preponderance of the evidence does not support it?).[3]

---

[2]  The *facts* of these cases are beside the point.  The conflict concerns a pure question of law.  Our sister circuits evaluate any evidence proffered at Steps 2 and 3 under a *legal* test far more deferential than the legal test set forth by our panel.  Unlike the concurrence, our sister circuits will not allow factfinders to "re-weigh the evidence considered by a legislative body" or "substitute [their] judgment in regards to whether a regulation will best serve a community"; so long as a legislature considered evidence "reasonably believed to be relevant to the problem addressed," courts in those circuits will not "vitiate the result reached in the . . . legislative process."  *G.M. Enters.*, 350 F.3d at 639-40; *see also Daytona Grand*, 490 F.3d at 881; *Gammoh*, 395 F.3d at 1126; *Fantasy Ranch*, 459 F.3d at 561.  Even if the facts were (somehow) relevant to a split on a purely legal question, the presence or absence of "local" evidence of extant empirical effects is *not* dispositive under settled Supreme Court precedent, *see City of Renton*, 475 U.S. at 51-52, a point the panel itself expressly acknowledges.  *See* Maj. Op., 492 F.3d at 1174.  Neither can it be said that the evidence before our court was unique in this respect.  *See, e.g.*, *Fantasy Ranch*, 459 F.3d at 559 (finding sufficient evidence even in the face of no pre-enactment empirical evidence and post-enactment empirical data indicating no secondary effects).

[3]  The holding in this case indisputably rests in part on the concurrence.

(continued...)

Factually, this case is of great practical importance to the large numbers of rural counties and municipalities within our reach. Rural jurisdictions within the Tenth Circuit will be unable to rely on existing empirical "urban" studies to regulate the secondary effects of adult businesses and will be forced to meet new, unique, and significantly higher legal burdens not imposed on their counterparts in other areas of the country. *See* Maj. Op., 492 F.3d at 1175 ("To hold that legislators may reasonably rely on those [urban] studies to regulate a single adult bookstore, located on a highway pullout far from any business or residential area within the County, would be to abdicate our 'independent judgment' entirely.").[4]

---

[3](...continued)
All three panel members joined the concurrence, giving it no less force than if it had been included in the majority opinion itself. *See Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949) ("[W]here a decision rests on two or more grounds, none can be relegated to the category of *obiter dictum*."). Moreover, the panel remanded this matter for trial, and the jury will be instructed on the concurrence's understanding of *Alameda Books* Steps 2 and 3. Every future secondary effects dispute in this circuit likewise will be measured against the concurrence's standards for Steps 2 and 3.

[4] It does not suffice to suggest that the county may rely on evidence local police departments gather after a business has opened. We have specifically said that a municipality "need not wait for sexually oriented businesses to locate within its boundaries, depress property values, increase crime, and spread sexually transmitted diseases before it regulates those businesses." *Z.J. Gifts D-2, L.L.C. v. City of Aurora*, 136 F.3d 683, 688 (10th Cir. 1998); Maj. Op., 492 F.3d at 1186 n.6. Instead, municipalities "may rely on the experience of other cities to determine whether the harms presented by sexually oriented businesses are real and should be regulated." *Z.J. Gifts*, 136 F.3d at 688. In this case, moreover, the legislature *did* analogize between the documented experience of urban areas and what it anticipated would occur in its jurisdiction; indeed, such an analogy formed the very basis of its decision. *See, e.g.*, Dickinson Cty. Ordinance No. 121304A

(continued...)

Though I can hardly say how I would have voted on the ultimate outcome of this case – for example, the county would still have had to show that its ordinance, even if a justified response, was narrowly tailored at *City of Renton* Step 3 – all of these reasons suggest to me that this case is of sufficient legal and practical significance that its resolution merited the attention of the full court.

---

[4](...continued)
(citing urban studies and basing its decision on the anticipation of similar effects in Dickinson County).  The problem was that the panel, applying far less deferential standards than our sister circuits, *rejected* the legislature's analogy: "All of the studies relied upon by the Board examine the secondary effects of sexually oriented businesses located in urban environments; none examine[s] businesses situated in an entirely rural area."  Maj. Op., 492 F.3d at 1175.

05-3473, *Abilene Retail #30, Inc. v. Bd. of Comm'rs*

**LUCERO, J.**, responding to the dissent from denial of rehearing en banc.


I write briefly to respond to my dissenting colleagues' arguments that en banc review was appropriate in this case. In doing so, I note that a potential circuit split, in and of itself, is not a reason to grant en banc review under our local rules. See 10th Cir. R. 35.1(A) ("En banc review is an extraordinary procedure intended to focus the entire court on an issue of exceptional public importance or on a panel decision that conflicts with a decision of the United States Supreme Court or of this court" (emphasis added)).

Regardless, the panel opinion does not create a circuit split with the Fifth Circuit decision in LLEH, Inc. v. Wichita County, 289 F.3d 358 (5th Cir. 2002). Three weeks after the LLEH decision, the Supreme Court handed down City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425 (2002). In clarifying the burden that a local government must meet at Step One of the Renton evidentiary inquiry, Alameda Books supercedes LLEH, and our panel opinion is predicated upon that holding. No Fifth Circuit case has since relied on the LLEH court's interpretation of Step One. Cf. Fantasy Ranch, Inc. v. City of Arlington, 459 F.3d 546, 559-62 (recognizing that Alameda Books controlled its Renton analysis, but applying the narrow tailoring inquiry from LLEH because "[t]he question of narrow tailoring was not before the Court in Alameda Books").

The four cases cited by the dissent as evidence of a circuit split with the panel's alternative holding are distinguishable, and particularly so when the concurrence is read in concert with the majority opinion. In each of the cited cases, the evidence produced by the local government at Step One was both more substantial and more contextual than that produced by Dickinson County. Unlike the present case, each of our sister circuits had local evidence before it in addition to the commonly cited studies.[5] Thus, in order to meet their burden to overcome that Step One evidence, the regulated businesses would have had to produce more evidence to prevail at Step Two than the Lion's Den did here. In other words, none of our sister circuits in these cases faced as close an evidentiary question as that presented herein.

Finally, rural governments are not precluded by the panel opinion from relying upon urban studies in appropriate contexts. See Abilene Retail #30, Inc. v. Bd. of Comm'rs, 492 F.3d 1164, 1177 (10th Cir. 2007) (stressing county's

---

[5] See Daytona Grand, Inc. v. City of Daytona Beach, 490 F.3d 860, 876-77 (11th. Cir. 2007) (city relied on "its own experiences" alongside studies and cases); Fantasy Ranch, 459 F.3d at 559-60 (5th Cir. 2006) (city relied on post-enactment evidence including at least one study conducted "within the City of Arlington" alongside foreign studies and cases); Gammoh v. City of La Habra, 395 F.3d 1114, 1126 (9th. Cir. 2005) (city council relied on "declarations from investigating vice officers" alongside studies and cases); G.M. Enters., Inc. v. Town of St. Joseph, 350 F.3d 631, 633-34 (7th Cir. 2003) (board "considered police reports" about local businesses alongside studies and cases). Although the presence of local evidence is not dispositive, it is indicative of higher production at Step One and a correspondingly higher Step Two burden.

failure to "<u>analogize</u> the studies it relied upon to the current or anticipated secondary effects of sexually oriented businesses located in a rural county" (emphasis added)).  Additionally, cities are permitted to rely on evidence garnered from local police departments or other local experts, and need not commission formal studies.  <u>See</u> <u>Alameda Books</u>, 535 U.S. at 435 (plurality opinion) ("[A] police department report's conclusions regarding crime patterns may reasonably be relied upon . . . .").